KNIGHTS TEMPLARS AND MASONS LIFE INDEMNITY CO.

*v.*

FRANK L. CRAYTON *et al.*

*Opinion filed April 20, 1904—Rehearing denied June 8, 1904.*

1. APPEALS AND ERRORS—*when error in refusing peremptory instruction is waived.* Alleged error in refusing to give an instruction directing a verdict for the defendant, asked at the close of plaintiffs' evidence, is waived where the defendant, after such refusal, introduces evidence to meet the plaintiffs' case.

2. GUARDIAN AND WARD—*guardian has no implied authority to compromise wards' claim.* A guardian has no power, without an express order of the court, to make any settlement of the wards' interest under a benefit certificate for less than the full amount.

3. SAME—*guardian has no authority to make admissions adverse to wards' interest.* It is the duty of a guardian to conserve and protect the interests of his wards, but it is not his duty, nor has he the authority, to make admissions that will be adverse to their interests.

4. BENEFIT SOCIETIES—*when release of liability on certificate is without consideration.* A release of liability on a benefit certificate, given by the guardian of the infant beneficiaries upon payment by the society of the amount of assessments paid in by the deceased, whom the society regarded as having committed suicide, is not a bar to a suit on the certificate, where the society was liable for the amount so paid whether the insured committed suicide or not.

5. SAME—*when beneficiaries are not estopped to sue on certificate.* Acceptance by beneficiaries, upon attaining majority, of the amount paid by a benefit society to their guardian as in full of all claims on the certificate does not preclude them from suing on the certificate, where the amount so paid and accepted was due, under the certificate, in any event, without regard to the society's liability for the principal amount of the certificate.

6. SAME—*proofs of death not binding as to cause of death.* "Satisfactory proofs of death," within the meaning of a benefit certificate, means satisfactory proof that the insured is dead and reasonable proof as to the cause of death; but such proofs are not binding upon either the society or the beneficiaries when the cause of death becomes a disputed question between them.

7. SAME—*society has burden of proving defense of death by suicide.* A benefit society has the burden of showing that the deceased committed suicide, where such defense is relied upon, notwithstanding the proofs of death tend to show that fact, and in the absence of such proof death by natural or accidental causes may be presumed.

8. SAME—*proofs of death cannot be considered by jury in determining cause of death.* The verdict of the coroner's jury attached to the

proofs of death may be considered by the jury in determining the cause of the insured's death, but neither the proofs of death nor the testimony taken upon the coroner's inquest can be considered on that question.

9. SAME—*infants not bound by admissions.* Infants are not bound by mere admissions adverse to their interests, for they can neither make them themselves nor authorize other parties to do so for them.

10. INTEREST—*when benefit society is liable for interest.* A benefit society is liable for interest where the certificate constitutes a contract, complete in itself, for the payment of a specified sum to persons specifically designated, within sixty days from receipt of proofs of death. (*Conductors' Benefit Ass.* v. *Loomis,* 142 Ill. 560, and *Same* v. *Tucker,* 157 id. 194, distinguished.)

*Knights Templars Indem. Co.* v. *Crayton,* 110 Ill. App. 648, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Marshall county; the Hon. L. D. PUTERBAUGH, Judge presiding.

JACK, IRWIN, JACK & DANFORTH, WARD & GRAYDON, and JAY H. MAGOON, for appellant.

CLARK VARNUM, W. A. FOSTER, and L. C. McMURTRIE, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a judgment of the circuit court of Marshall county in an action of assumpsit by the appellees against the appellant, upon a certificate of membership issued to John Crayton, the father of appellees, providing for the payment to appellees of the sum of $5000 and of the money paid on the policy in assessments, within sixty days after notice and the receipt of satisfactory proofs of death of the said John Crayton.

The policy provided that in case of self-destruction of the holder of the policy, whether voluntary or involuntary, sane or insane, the policy should become null and void, so far as the same related to benefits, but that

the company would pay the widow and heirs or devisees such an amount as the holder should have paid to the company in assessments on the same, without interest. The certificate of membership was issued to said John Crayton on the first day of April, 1886, upon his application, and was payable, specifically, to Frank L., Laura and Margaret J. Crayton, the appellees and beneficiaries therein named. The insured came to his death on the 31st day of July, 1891, by means of a gunshot wound through the head, and his death was either suicidal or accidental. A coroner's inquest was held on the day of the death of the insured, and the verdict of the jury was that the deceased came to his death "by means of a rifle-ball shot through his head by his own hands, from a Winchester rifle, * * * said wound having been inflicted with suicidal intent, while laboring under a fit of insanity." On the 8th day of August, 1891, Ellen C. Crayton, the mother of appellees, was appointed their guardian. At that time the ages of appellees were as follows: Frank L. Crayton seventeen years, Laura Crayton sixteen years, and Margaret J., commonly called Josephine, thirteen years. Notice of the death was immediately given to appellant, and blanks for making proof of death, together with instructions as to what was required by appellant in making such proof, were forwarded to the guardian. By the instructions the claimant was required to state by what title she made her claim; to furnish a certificate of the attending physician; the certificate of a householder, the undertaker, and, in case of suicide or sudden death, a certified copy of the verdict, and of the evidence on which such verdict was based, before the coroner. About the 12th of August, 1891, the proofs, as required, were completed and sent to the appellant, and the receipt of such proofs was acknowledged by the appellant. In the statement of the guardian making such proof, the following, among other things, appeared:

"Number, date and amount of policy.—No. 2174; date, September 7, 1886; $5000.

"(*a*) In what capacity or by what title do you make complaint?—(*a*) Guardian for Frank, Laura and Josephine Crayton.

"(*b*) Are you legally entitled to receive the entire amount payable on the policy?—(*b*) Yes.

"(*a*) Remote cause of death?—(*a*) Supposed sunstroke some two or three years ago.

"(*c*) Immediate cause of death?—(*c*) Supposed suicide."

Upon the receipt of the proofs of death appellant notified the guardian that the case was one of suicide, and that the only liability of appellant, under the policy, was for the amount of assessments paid upon the policy, exclusive of interest, which was stated to be $179, and on January 24, 1892, pursuant to an agreement between Ellen C. Crayton, as the guardian of appellees, and appellant, paid to such guardian $179. The payment was made by draft or check drawn by appellant's president and manager upon the appellant company, payable to the order of Ellen C. Crayton, guardian, and contained the following: "Being payment in full of all demands under policy No. 2174, on the life of John Crayton, deceased." Upon receipt of this check or draft the guardian surrendered up the policy or certificate of insurance and endorsed thereon a receipt, which purported to be "in full of all claims under the within policy."

The declaration consists of a special count and the common counts. The special count is upon the policy *in hæc verba*, and alleges the death of the insured on the 31st day of July, 1891; that appellees were the beneficiaries under the policy; that the insured performed the conditions of the policy required of him, and that appellant was furnished with satisfactory proof of death.

Eleven pleas were filed. A demurrer was sustained to the second, fourth and fifth pleas, and as error is not assigned upon this, it need not be further noticed. The

first plea was the general issue; the third, that the assured committed suicide or perished by self-destruction, voluntary or involuntary, while sane or insane; the sixth, that the plaintiffs did not make claim for benefits under said policy within six months after death of the assured, as is provided by the policy, constitution and by-laws; the seventh is the ten years' Statute of Limitations; the eighth, fraud and misrepresentation in obtaining the certificate of membership sued on; the ninth, settlement and release; the tenth, settlement and non-disaffirmance by the plaintiff; and the eleventh, ratification of the settlement by the plaintiffs. Replications were filed to the pleas, and upon a trial before a jury a verdict was rendered for appellees for $7457.50. A motion for new trial was made by appellant and overruled, and judgment entered on the verdict.

Just prior to entering upon the trial in the court below appellant asked leave to file four additional pleas, which was denied by the court, and though error is assigned upon the action of the court, no error is pointed out or insisted upon by appellant in its brief and argument, and the same need not be further adverted to.

The only errors urged for our consideration relate to the giving and refusing of instructions.

At the close of the plaintiffs' evidence the appellant requested the court to give, and offered, an instruction directing a verdict in its favor. This instruction was refused, and at the close of all the evidence was again offered. As appellant, after the close of plaintiffs' evidence, offered evidence on its part, it thereby made a submission of the case upon the whole evidence, and waived its right to insist upon the error, if any, in refusing the peremptory instruction at the close of the plaintiffs' evidence. (*West Chicago Street Railroad Co.* v. *McCallum*, 169 Ill. 240.) It also appears that this error was not insisted upon in the motion for a new trial, and cannot now be relied upon for that reason. *Illinois Central Railroad Co.*

v. *Johnson*, 191 Ill. 594; *Brewer & Hoffman Brewing Co.* v. *Boddie*, 162 id. 346.

We are called upon to determine whether the peremptory instruction should have been given at the close of all the evidence. We have examined the evidence carefully, and are impressed with the resume of it given by the Appellate Court in its opinion, which is as follows:

"The main question is whether John Crayton committed suicide. We have read the evidence on this subject in the record itself, and have endeavored to give it careful consideration. There were circumstances proved from which the inference of suicide might be drawn. Deceased was killed by a bullet which entered near the center of his forehead and passed out near the rim of his hat on the back of his head. The shooting took place on his barn floor, between 11 A. M. and noon. His body was found lying on the floor, with his head to the east and with his Winchester rifle between or near his legs, pointing to the south-east. His rifle contained only an exploded shell. A pine stick lay near him, which defendant asks us to infer he used in firing the gun. Deceased had suffered from a sunstroke some years before, and since then had been moody, excitable and peculiar, and his family and neighbors doubted his sanity. During the forenoon of his death he had spoken harshly to his son about being out late at night. On the other hand, it does not appear that he had ever expressed or indicated any suicidal purpose or intent. He went to the barn about eleven o'clock that forenoon for the expressed purpose of cleaning his rifle. He called for certain apparatus he had for that purpose and caused his children to search the house for it. When they could not find it he said he would go to the barn and use a wire for a ramrod, meaning in cleaning his gun. His body was found in front of and close to his work-bench in the barn, in front of a window and with the big barn doors open towards the house. Pieces of cloth and other suitable apparatus for cleaning

the gun were on the bench. All the cartridges but this one were on the bench. The exploded shell in the gun bore the marks of a knife. A common jack-knife was stuck in the bench. Deceased had on his boots and could not have fired the gun with his feet. It was shown that kindling wood was often split at that place, and that there were quite a number of pine sticks lying near where deceased fell, thus weakening the inference that deceased had been using the stick which defendant's witness described as lying near his body. There was no discoloration by powder or by burning about the head of deceased. Experiments were made during the trial by firing cartridges of the same make and size out of the same gun at a heavy card-board paper,—one where the muzzle of the rifle was held close to and almost in contact with the card-board, and others at six, twelve, twenty-four and thirty inches distance therefrom. These papers were identified and put in evidence. Though objection was made and exception preserved by defendant, yet that exception, as already suggested, is not argued in defendant's opening brief, and it is therefore waived, and the case stands here as if that proof had been received without objection. But though the bill of exceptions recites these card-boards were admitted in evidence, they are omitted from it. In this condition of the record we think it fair to assume they tended to show that where the muzzle was near the card-board the latter bore indications of discoloration by powder or burning, and tended to show that the muzzle of this rifle was not near the head of John Crayton when the rifle was discharged. If the muzzle was two or three feet from Crayton's head when the rifle was discharged, this might well be considered  *  *  *  as tending to indicate the discharge was accidental and not intentional. Deceased may have intentionally killed himself. On the other hand, he may have gone to the barn solely to clean the rifle, and in his preparations to clean it may have got together the clean-

ing apparatus found on the bench and removed from the rifle the cartridges found on the bench; may have tried to remove the last cartridge and had difficulty in doing so, and used the knife upon it in an unsuccessful effort to get it out, and thereby made the marks found upon the exploded shell, and then stuck the knife in the bench, and may then have done something else with the rifle, carelessly, in an effort to loosen the remaining shell, and in so doing unintentionally discharged the gun with the fatal result. The burden of proving intentional self-destruction was upon defendant. In our opinion the language of the policy with reference to self-destruction, 'whether voluntary or involuntary, sane or insane,' does not apply here if the gun was accidentally discharged while being handled by Crayton, if he had no intention of discharging it or no intention of hitting himself."

This statement and review of the facts we adopt, and from it are satisfied that the court did not err in refusing the peremptory instruction.

It is suggested, however, that the Appellate Court, in its review and consideration of the instruction above mentioned, failed to consider certain matters that were material to the case, and that the appellees should have proved, but failed to prove, that the assured paid assessments under his policy according to its terms. We are unable to see how this question can arise, when it is expressly stipulated in the record that the amount of the assessments paid by the assured was $179, and appellant at all times admitted its liability to that extent, and bases its defense mainly upon the theory that the acceptance by the guardian of the assessments paid by the assured was a settlement of all claims and a bar to this action. Nor was the supposed settlement made with the guardian a bar to this action. No authority was given by the probate court or county court to the guardian to compound or release the claim due the appellees, as her wards, or any part of it. The matter was not brought

to the attention of the court until the year 1900, when the guardian made a report.   The guardian had no personal interest in the policy or the funds arising from the same, and could not, upon any theory of which we are advised, make any settlement with the appellant for less than full payment without the express order of the court appointing her, from which its approbation of her purpose to compound should appear.   Starr & Cur. Stat. chap. 64, sec. 17;   *Hayes* v. *Massachusetts Mutual Life Ins. Co.* 125 Ill. 626.

The policy in this case provides that appellant will pay to appellees, as beneficiaries, $5000 if John Crayton dies from any other cause than suicide, and also pay all assessments that he paid under said policy.   If, then, the assured did not die a suicide, as the trial and Appellate Courts have found he did not, appellant owed and should have paid to appellees, or their legal guardian, upon receipt of notice and proof of death, or within sixty days thereafter, both sums,—that is, the $5000 and the $179 paid in assessments.   That it received notice and proof of death promptly and that the proofs were satisfactory to it cannot, under this record, be questioned.   By its supposed settlement with the guardian it paid her one of the sums that it owed to her.   There was no question about that amount being due, and the payment of it could not, in any sense, be said to be a settlement of anything. It was simply payment of a sum of money due.   At the time of that settlement, if John Crayton was not a suicide, $5000 still remained due to appellees, and was not paid within sixty days from the receipt of notice and proof of death.   By the payment of a portion of a whole debt, or by the payment of one of two entire debts, the appellant could not, by any stipulation made with the guardian, be released from its liability to pay the entire debt thus owing, and the release relied upon was ineffectual because there was no consideration for it.   (*Hart* v. *Strong*, 183 Ill. 349; *Jaffray* v. *Davis*, 11 L. R. A. 711, note;

*Tyler* v. *Odd Fellows Mutual Relief Ass.* 145 Mass. 134.) The case last cited is quite similar to the one at bar and fully sustains appellees' position in all its substantial phases.

Nor were appellees estopped by the acceptance from their guardian, as they attained their majority, of their respective proportionate shares of the $179 so received by the guardian. There was no element of estoppel present. Appellant had in no manner changed its position. Under a claim advanced by itself it was enabled to effect a supposed settlement with the guardian by paying her one of the sums due. It did not, as in the case of *Tyler* v. *Odd Fellows Mutual Relief Ass. supra*, pay the other sum to anyone, but held it under the claim that it was not liable to pay it to anyone. And the claim that the sum now sued for was not demanded within six months is hardly worthy of consideration. The giving of the notice of death and making the required proof thereof was all the demand that was necessary. The appellant undertook to pay these sums of money upon notice and proof of death, and it had these and made no question about them. The question was as to the cause of death, and upon that question it attempted to effect a settlement with one who had no authority to make such settlement. Had appellees been adults and themselves received the $179 paid by appellant they would have only received one of the sums due them, and would not have been precluded by any supposed settlement or release from insisting upon the other sum now sought to be recovered in this suit. Such being the case, the fact that after they attained their majority they received from their guardian their proportionate shares of the money of these assessments received by her can no more operate as an estoppel or be treated as a ratification by them, or have other or greater effect, than if the settlement had been made by them with appellant directly.

The provision of the policy that the claimant should make satisfactory proof of death cannot be held to mean

that such proof should be made as should in all cases satisfy the insuring company of the cause of the death. In the present case it appears that although the guardian complied with all the requirements made by appellant in making the proof of death, appellant was not satisfied that the death was or was not the result of suicide, but saw fit to urge upon the guardian that the proof showed it a case of suicide, and insisted upon a settlement upon that basis, and now insists that such a settlement was made. The appellant was entitled to have satisfactory proof that the insured was dead, and to demand of the beneficiaries, or those representing them, to adduce reasonable proof of that fact and also reasonable proof as to the cause of death, but neither the appellant nor the beneficiaries were bound by such proof when the cause of death became a question. Although the proof was satisfactory as formally establishing the death, appellant had the right to refuse to pay upon the ground that the insured came to his death by willful self-destruction, and to put appellees to their action to recover. Instead of doing so, it took the position that its liability was limited to that of the assessments paid and procured a supposed settlement. Had the proof of death stated explicitly that the immediate cause of death was suicide, which it did not but stated that it was supposed suicide, the appellees would not have been bound thereby. Nor would the guardian who made the statement, if she had been the beneficiary, been estopped to deny, upon the trial, that death was due to suicide, but could have shown the contrary. *Knights of Maccabees of the World* v. *Stensland,* 206 Ill. 124.

The provision in the policy that all claims under it shall be made within six months was sufficiently complied with in less than thirty days after death, to which objections were not made, and the statement of the guardian of the beneficiaries that she was authorized to receive the full amount of the insurance was presented to appellant.

It is complained that the jury were instructed that if they found for appellees they should find for $5000, with interest at five per cent from sixty days after proofs of death were given to appellant. By the policy, which was the contract, and which was complete in all its parts, designating specifically the beneficiaries and the sums to be paid, it was provided that the assessments paid by the insured should be paid to the beneficiaries without interest, but no such provision was made as to the principal sum. Appellant has cited cases supporting its contention, but in all the cases so cited it will be found that the written contract was not complete but that the contract rested partly in parol, and required evidence to determine who were the beneficiaries under it or the amount of the insurance, or to establish some other material part of the contract, or was in cases where, by the policy, interest was not to be paid. The amount of the assessments had been agreed upon and paid before suit, and the principal beneficial sum sued for was certain and payable to persons whose identity was fixed in the contract, within sixty days from the receipt of notice and proofs of death, and was, within our statute, a contract for the payment of money, and the instruction was proper. Hurd's Stat. chap. 74, sec. 2; *Massachusetts Mutual Life Ins. Co.* v. *Robinson*, 98 Ill. 324.

The cases relied upon by appellant are *Conductors' Benefit Ass.* v. *Loomis*, 142 Ill. 560, *Conductors' Benefit Ass.* v. *Tucker*, 157 id. 194, and *West Chicago Alcohol Works* v. *Sheer*, 104 id. 586. The last case cited is simply authority for the proposition that interest is not allowed unless the contract is in writing and for a sum certain. In *Conductors' Benefit Ass.* v. *Loomis*, *supra*, the entire policy or certificate consisted of four lines, outside of the date and signatures of the officers, and merely stated that Loomis was a member of the association. By the rules of the association certain persons named in its by-laws were appointed as beneficiaries of the members, and certain

209—36

benefits were to be paid to such beneficiaries upon the death of the member, but the policy neither pointed out who the beneficiary was nor what was to be paid him, and it was necessary by parol evidence to ascertain both these matters, and this court held that the contract was an oral one.   The *Tucker case, supra,* arises over a certificate precisely like that in the *Loomis case,* and the same reason and rule apply.   We do not regard either of these cases as authority for the proposition contended for, when applied to the policy in the case at bar.

It was proper to instruct the jury that the burden of proof was upon appellant to show that the assured came to his death by self-destruction, and that in the absence of proof of the cause of death, natural or accidental causes will be presumed, and that if the jury were unable to determine the cause of death they were not authorized to find it was from self-destruction; and the fact that the proofs of death tended to show that the death was suicidal did not change the rule or shift the burden. *Knights of Maccabees of the World* v. *Stensland,* 206 Ill. 124.

On the trial of the cause appellees did not offer any evidence of proofs of death, but simply introduced testimony showing that proofs had been made, sent to and received by appellant and acted upon by it.   Appellant did introduce the proofs of death and all the papers attached thereto, which were admitted over objections of appellees.   The court instructed the jury that neither the proofs of death nor the papers attached thereto, except the verdict of the coroner's jury, should be considered by them in determining the cause of death.   It is urged by appellant that this instruction is wrong in two respects; that the papers attached to the proofs of death all became competent evidence to be considered by the jury in determining the cause of death, and particularly the testimony taken before the coroner's jury, which, it is urged, formed a part of the inquisition, and under the former decisions of this court, as found in *United States*

*Life Ins. Co.* v. *Vocke*, 129 Ill. 557, *Pyle* v. *Pyle;* 158 id. 289, *Grand Lodge I. O. M. A.* v. *Wieting*, 168 id. 408, and other cases cited, should have been considered by the jury, in connection with the verdict of the coroner's jury, in determining that question. In this we think counsel for appellant are in error. This court has never held that the depositions taken at a coroner's inquest were competent evidence in such cases, but, on the contrary, in *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *McGrath*, 115 Ill. 172, we held they were incompetent, and subsequently, in the *Vocke case, supra*, and other cases following it, held that the verdict was competent, and gave to it somewhat the dignity of a court proceeding; but the depositions, which are mere *ex parte* statements, would seem, upon principle, to be incompetent for any purpose other than contradiction.

It is said that one of the appellees, Frank L. Crayton, testified at the inquisition, and that his deposition was among those attached, and that the deposition should have been considered in connection with his testimony, or that his testimony contained in the deposition should have been treated as his admission. He was a witness upon the trial of this case and appellant was afforded ample opportunity to cross-examine him, and if, in his testimony in the trial, he stated the matters differently than they were stated in his deposition, appellant had the right to use the deposition to show that fact and break the force of his evidence. This was not done, and no reason exists for holding that his deposition should have been considered by the jury as his admission. It may be further suggested that by mere admission infants are not bound. They can neither make them nor authorize any other person to make them for them. Where guardians are appointed, it is their duty to conserve and protect the interests of their wards, but it is neither their duty, nor have they authority, to make admissions that will be adverse to their interests. (15 Am. & Eng.

Ency. of Law,—2d ed.—71; *Cochran* v. *McDowell*, 15 Ill. 10.) And so, the further contention of appellant that the statement of the guardian, in her affidavit making proof of death, that the immediate cause of death was supposed suicide, should have been treated as an admission of that fact, cannot be sustained.

Numerous other questions are made upon instructions that were given and refused, but what we have stated above covers all that seems to be material as to any that were given, and those that were refused were properly refused, because such of them as stated correct propositions of law applicable to the case were covered by other given instructions containing the same proposition.

From a careful review of the case we are satisfied that appellant was accorded a fair and impartial trial, and that the instructions, as a series, fairly and fully presented the law of the case to the jury.

The judgment of the Appellate Court is right, and is affirmed.

*Judgment affirmed.*