### Julia M. Miles, Appellee, v. Court of Honor, Appellant.

1. INSURANCE—*burden of proof of suicide.* In an action by a proper beneficiary to recover on a life insurance policy, an instruction which does not require plaintiff to show that death was not the result of suicide, in making out a *prima facie* case, but places the burden of proof of suicide on the defendant, is proper.

2. APPEALS AND ERRORS—*harmless error.* Conflicting instructions do not constitute reversible error where the verdict shows that the jury followed the correct rule as laid down in one of the instructions.

3. Evidence—*depositions taken at coroner's inquest.* In an action on a life insurance policy, where the jury's verdict at a' coroner's inquest as to the death of the insured is admitted in evidence, depositions of witnesses taken at such inquest are properly excluded unless they are offered merely for the purpose of contradiction.

4. Insurance—*definition of suicide.* An instruction in an action on a life insurance policy that "suicide is the act of designedly destroying one's own life by a person who has attained the years of discretion, and is of sound mind, is sound where the question of involuntary suicide is covered by other instructions.

Appeal from the Circuit Court of Jackson county; the Hon. William N. Butler, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed June 27, 1912.

William B. Risse, R. J. McElvain and Otis F. Glenn, for appellant.

A. L. Spiller and A. S. Caldwell, for appellee.

Mr. Presiding Justice Higbee delivered the opinion of the court.

This was an appeal from a judgment for $1,000.00 and interest, rendered in favor of appellee, as beneficiary in a certificate of membership, issued by appellant, Court of Honor, to her daughter Mabel L. Merritt, April 25, 1907. The application, which was made a part of the insurance contract and was set out in the declaration, contained the following provision, "I understand and agree that if I commit suicide, whether sane or insane, voluntary or involuntary, there shall be payable to the beneficiaries entitled thereto five (5) per cent of the face value of the certificate for each year I shall have been continuously a member of the society, and after twenty (20) years of continuous membership, the certificate shall be payable in full."

Appellant pleaded the general issue and also filed special pleas, setting up suicide of the insured and tender of five per cent of the face value of the policy, excessive use of liquors and narcotics on her part

which forfeited the certificate of insurance under the application and that she had made a false answer to one of the questions in the application in regard to the use of narcotics.

Mabel Merritt, the insured, died on the morning of August 19, 1909. The proofs of death presented to appellant, contained the affidavit of appellee, the beneficiary, who swore that her daughter the insured, died from an "over dose of morphine" and the affidavits of two physicians and two officers of the lodge of which she was a member, who swore that she died from "morphine poison." An inquest was held on her body on the day of her death, and the verdict of the coroner's jury, which was also introduced in evidence on the trial of this cause, was that, "she came to her death by morphine poison taken by herself and by her own hand, on August 18, 1909, sometime between 6 and 9 P. M. of which she died at 12:18 A. M. August 19, 1909, as result of morphine poison." The only evidence introduced on the trial of this cause, in addition to the proofs of death and coroner's verdict above referred to, was the testimony of appellee, who stated, among other things, that she had heard that her daughter bought morphine on the afternoon before her death, but that she knew nothing about it; that if her daughter brought any morphine home with her from a trip she made down town, that afternoon, witness did not know anything about it. She also stated that while she signed the affidavit submitted by her in connection with the proofs of death, it was not read over to her before she signed it. There was no proof tending to sustain any of appellant's pleas except that which alleged the suicide of the insured.

All the instructions offered by both sides, appear to have been given and an examination of them shows that they were not at all harmonious. Instructions on the part of appellee, told the jury that if they found from a preponderance of the evidence the certificate in question was issued to said Mabel L. Merritt and

that she had complied on her part with the require-
ments of the certificate and the constitution, rules and
by-laws of appellant during her lifetime, that then
proof of her death and a compliance on the part of
appellee with the requirements of said Court of Honor
as to such proofs, entitled appellee to recover, unless
the jury found from a preponderance of the evidence
that appellant had sustained one or more of the de-
fenses set up in the several special pleas. On the other
hand the jury were instructed on behalf of appellant,
that before plaintiff was entitled to recover it must
appear from the weight of the evidence that Mabel L.
Merritt had complied with all the rules, laws and
regulations and that she did not come to her death by
the taking of morphine, "either voluntary or involun-
tary."

In accordance with these instructions, it was insisted
on the part of appellant, that the burden of proof was
upon appellee in the first instance in making out her
*prima facie* case, to show that the insured did not
come to her death by the taking of morphine either
voluntarily or involuntarily, while appellee insisted
that this was not part of the *prima facie* case to be
made out by her, but being a matter of defense set
up by appellant in its special pleas, the burden of prov-
ing the same was upon appellant. We concur in the
position taken by counsel for appellee, and in our opin-
ion appellee's instructions upon this question were
correct. Continental Life Ins. Co. v. Rogers, 119 Ill.
474; Court of Honor v. Clark, 125 Ill. App. 490.

The fact that conflicting instructions upon this sub-
ject were given, cannot however avail appellant in
this case, as the verdict of the jury shows they fol-
lowed the correct rule which was laid down in appel-
lee's instructions.

Appellant also further complains that while the
court admitted the verdict of the jury at the coroner's
inquest, it refused to admit the testimony of the wit-

nesses taken at the inquest and made a part of the coroner's report. The ruling of the court upon this question would seem to be correct upon the authority of Knights Templar's Indem. Co. v. Crayton, 209 Ill. 550, where it was held that the verdict rendered at the coroner's inquest was competent, but that the depositions being mere *ex parte* statements, would seem upon principle, to be incompetent for any purpose other than contradiction.

The depositions of the witnesses before the coroner were not offered in this case merely for the purposes of contradiction, and were therefore properly excluded.

Instruction No. 9 given for appellee, told the jury that "suicide is the act of designedly destroying one's own life by a person who has attained the years of discretion, and is of sound mind." Appellant claims that this instruction was erroneous for the reason that it ignored and failed to define involuntary suicide. The instruction correctly defined suicide, which was one of the defenses relied upon by appellant. The fact that it did not also make a distinction between voluntary and involuntary suicide, if indeed there is such a thing strictly speaking as involuntary suicide, did not constitute error or mislead the jury, as appellant's instructions repeatedly defined involuntary suicide in terms most favorable to the defense. Two of appellant's instructions went so far as to inform the jury that if they found the insured came to her death by the taking of morphine, then it made no difference whether she took the drug voluntarily with the intention of killing herself or not, that it was sufficient to defeat a recovery if she took said drug and thereby killed herself involuntarily, except as to five per cent. of the face of the policy.

These instructions fully expressed appellant's theory of the law and did so in a way more favorable to appellant than it was really entitled to have the same stated.

The jury upon a consideration of the facts and the instructions found the issues for appellee and the judgment of the court below, based on the verdict, should and will be affirmed.

*Judgment affirmed.*