T. B. Adams, Inc., Appellee, v. Astoria Box Company,
Appellant.

Gen. No. 8,146.

Opinion filed January 25, 1928.

WILSON & SCHMIEDESKAMP, for appellant.

MARTINDALE & MARTINDALE, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

In a trial before the court, without a jury, appellee obtained a judgment against appellant in an action of assumpsit for $408.95, in the circuit court of Adams county. Appellee is a corporation located in the city of Quincy, Adams county, Illinois, and its business is that of a lumber broker. Appellant is engaged in the wholesale business of selling lumber at Astoria, Oregon. The suit was commenced by the issuance of an attachment writ levied upon the Moller-Vandenboom Lumber Company as garnishee. The declaration consists of the common counts to which the plea of general issue was filed. The suit is brought to recover commissions alleged to have been earned by appellee for various sales of lumber for and on behalf of appellant. Appellee claims that he is entitled to a commission of 5 per cent of the amount of all sales of spruce lumber made by him for appellant, after there has been deducted from the gross amount thereof the charges for freight and a discount of 2 per cent which was allowed the customer if payment for the lumber was made within 15 days after the receipt thereof and that the amount of this commission was expressly agreed upon and was also the amount of commission established by the general usage and custom of the trade in the market where the lumber was sold.

Appellant presents three reasons for avoiding liability: (1) that there never was any rate of commission agreed upon; (2) that if the rate of commission is to be established by a trade custom it should be controlled by the trade custom established by the lumber mills of the Pacific coast, which is a commission of $1 per thousand feet for spruce lumber, and $.50 per

thousand feet for common lumber, on which basis appellee has been fully paid; (3) that there was an accord and satisfaction between the parties.

On May 23, 1925, in reply to an inquiry made by appellee in regard to certain spruce lumber, appellant, by a letter, quoted the price of such lumber and concluded the same as follows: "We hope to be favored with these orders and any other spruce inquiries you have, because we expect to be sawing mostly spruce for the balance of the year." On May 28, 1925, appellee sent the following telegram to appellant, "Refer your letter twenty-third if can ship immediately load car eight inch Band Better Spruce Springman Lumber Company, Alton, Illinois. Seventy six fifty prefer surfaced four sides. *Subject five percent commission on the net to me.* Wire car number as soon as loaded." The above order for lumber was accepted by appellant although it was subsequently canceled by the buyer. In June of the same year, appellee received a telegram in response to an inquiry in regard to another sale of lumber wherein the price was quoted and contains these words, *"delivered less usual commission."* On August 17, 1925, appellant sent a credit memorandum to appellee in regard to an invoice of lumber sold to the Peter Vredenburgh Lumber Company, July 13, 1925, which contained these words, *"5 per cent commission on net....$66.35."* At least one of the commissions earned by appellee was paid by appellant and was computed at the rate of 5 per cent on the net proceeds of the sale. Eight other carloads of lumber were subsequently sold by appellee for appellant, the last one being on July 3, 1926. The first order sent to appellant, and which was accepted and agreed to by appellant, contained the condition that appellee was to receive a commission of 5 per cent on the net proceeds of the sale. By the credit memorandum above mentioned, appellant acknowledges that appellee was to receive the 5 per cent commission on that

particular sale. The payment by appellant to appellee, in one instance, of the 5 per cent commission on the sale, conclusively shows that appellant understood and agreed to pay appellee 5 per cent commission on the net proceeds of all sales of spruce lumber. After the commission was agreed upon in the terms of the contract for the first sale of spruce lumber, the same commission will be presumed to apply to all future sales of the same commodities, unless some other agreement in regard thereto was made. As was said by Mr. Justice Breese in the case of *Bacon v. Cobb,* 45 Ill. 47: "If a fruiterer buys a barrel of apples of a farmer at a certain price per bushel or barrel, to be paid for on delivery at the residence of the purchaser, and on inspection, sending his bill with the apples, and it is paid for by the fruiterer, and the farmer soon after addresses a letter to the purchaser, saying that he can have twenty barrels of apples at the same price, or a greater price, as the case may be, and the fruiterer accepts the offer,—can there be any question as to the place of delivery and inspection, though not one word is said about either? The subsequent contract is supposed to be on the same terms as to delivery, inspection and payment, as the contract for the first barrel, if there be no proof to the contrary. Such a case is within the spirit of the decision in the case of *Robbins v. Laswell,* 27 Ill. 365, and is the common sense of the world." The above principle is applicable and pertinent to the facts in this case.

Appellee introduced testimony tending to prove that it was the trade custom of lumber brokers in the vicinity of Quincy, Illinois, to receive 5 per cent commission on the net proceeds of sales of spruce lumber. This evidence was proper as the trade custom which governs is established by the usual price charged and received for similar services by others engaged in the same line of work, in the same vicinity. 2 C. J. 783.

On February 16, 1926, appellee wrote a letter to appellant in substance stating that he had not received any commissions for the sale of seven cars of lumber, naming them, and closing with this request: "The commission on these cars amounts to between $500.00 and $600.00 and I need the money very badly. Won't you please attend to this, if you have not already done so and send a check at once." Appellant did not reply to this letter but sent to appellee a formal statement of the number of feet of lumber sold by appellee on which his commissions were figured at the rate of $1.00 per one thousand feet, and showing a balance due appellee, as his commissions, of $146.43, and a check was inclosed with the statement for the above amount. Appellee replied to this letter as follows: "I just received your check for $146.43 submitted as payment for six cars of lumber shipped on my orders. All of these shipments were subject to 5 per cent commission on the net to me. There were seven cars as listed in my letter of Feb. 17th. The total amount of commission for these seven cars figures according to your invoices $536.90. I am presuming that your check for $146.43 is a mistake and that you will send me a check for the balance promptly. All of our dealings were on the basis of 5 per cent and the shipments herein mentioned are, of course, subject to the same basis. In your statement of February 18th you have left off car No. 30289 shipped on my order No. 2716." To this letter appellant replied as follows: "We have received your letter of the 22nd ult. regarding our check for $146.43. The customary commission we pay on uppers is $1.00 per M, and, as a matter of fact, when we received your order and on all the wires which lead up to it, *there was nothing to indicate anywhere that you were to be paid a commission at all. By referring back to the correspondence we have been unable to locate any reference to commission,* but as the customary commission is $1.00 on

uppers and 50c on common where the wholesaler does not have to guarantee the account or have it charged to him, we feel that our check for $146.43 fully covers your commission.'' From the facts above noted, it does not seem possible that the statements in this letter could have been made in good faith. Appellee did not return the check for $146.43 to appellant, but cashed the same and kept the money, and it is the contention of appellant that these facts constituted an accord and satisfaction. An accord and satisfaction must be based upon a compromise in good faith of unliquidated or disputed demands where there is an honest difference between the parties as to the amount due. *Farmers' & Mechanics' Life Ass'n v. Caine,* 224 Ill. 599. It must be the compromise of a demand, the validity of which is disputed in good faith. *Farmers' & Mechanics' Life Ass'n v. Caine, supra; Jackson v. Security Mut. Life Ins. Co.,* 233 Ill. 161; *Canton Union Coal Co. v. Parlin & Orendorff Co.,* 215 Ill. 244; *Bingham v. Browning,* 197 Ill. 122; *Ostrander v. Scott,* 161 Ill. 339. The payment should be offered in such a manner or accompanied by such acts or declarations as amount to a condition that if the party to whom it is offered takes it, he does so in satisfaction of his demand. *Canton Coal Co. v. Parlin & Orendorff Co., supra.* There were no words indorsed on the check in question to show that it was given in full settlement of the account and there was nothing in the statement presented with the check which tended to inform appellee that if he accepted the same it was in full settlement of his claim for commissions. Up to the time appellee requested the payment of the balance due on his commissions there had been no dispute in regard thereto or as to the rate thereof. There was nothing said or done between the parties that would lead appellee to understand that by accepting the check he was compromising and settling a disputed claim for his commissions, and also, under the evidence in this

case, we do not believe that the validity of appellee's claim is disputed in good faith by appellant. The defense of accord and satisfaction cannot be sustained.

The larger part of the bill of exceptions in this case consists of orders, letters, telegrams, statements and other exhibits, very few of which are abstracted. Fifty-one of such exhibits are not abstracted at all, but are referred to in the abstract, as an example, "Plaintiff's Exhibit 23. See page 50 of record." We have been put to the unnecessary burden of searching the record to ascertain what the evidence was and there is nothing in the abstract to indicate which witnesses testified on behalf of the plaintiff and which on behalf of the defendant. For these reasons alone this court had the power, under its rules, to affirm the judgment for want of proper abstract, if it had seen fit to do so.

There is no reversible error in the record and the judgment is affirmed.

*Judgment affirmed.*