## WHITING STOKER CO. v. CHICAGO STOKER CORPORATION.

### No. 9563.

United States Court of Appeals
Seventh Circuit.

Dec. 3, 1948.

Rehearing Denied Jan. 17, 1949.

---

claratory judgment upon a contract dated September 2, 1944, under which plaintiff was purchaser and defendant seller ·of a going business engaged in manufacturing, selling and servicing stokers. Ignoring provisions of no moment here, briefly, defendant sold to plaintiff with covenants of warranty and obligated itself to refrain, for a period of 30 years, from using its trade-names, and, for a like period, from making stokers like those previously made. In return, plaintiff was to pay immediately certain sums of money and, in addition, certain emoluments based on its net sales of stokers during the next 15 years. Plaintiff agreed also to provide parts and service for maintenance of stokers previously sold by defendant.

The crucial contractual provisions, in so far as the present action is concerned, are those ·relating to the inventory of parts in the hands of defendant at the time of the execution of the contract, in pertinent part, as follows:

Paragraph A-2

"A. The Seller agrees:

"2. To sell, set over, transfer and assign to the Buyer, * * *, $25,000.00 worth of stoker parts to be selected from the Seller's present stock thereof * * *; and to grant to the Buyer the right and option to purchase within one year from the date hereof the remainder of said stock of parts."

Paragraph B-2

"B. The Buyer agrees:

"2. To purchase and pay for, additionally, immediately upon the execution of this contract, $25,000.00 worth of stoker parts to be selected from the Seller's present stock * * *; *and to purchase and pay for within one year from date hereof all of that portion of the remainder of said stock of parts which can reasonably be utilized by the buyer,* * * *." (Emphasis supplied)

Paragraph B-4

"B. The Buyer agrees:

"4. To refrain from manufacturing or purchasing elsewhere any such stoker parts

Casper W. Ooms and G. Donald Whitehouse, both of Chicago, Ill., for appellant.

Harry Abrahams and Ode Rankin, both of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, MINTON, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from an adverse judgment in an action brought for a de-

or sub-assemblies until that portion of the Seller's and Whiting Corporation's[1] stock of stokers, parts and sub-assemblies which can reasonably be utilized by the Buyer shall have been completely exhausted."

Paragraph C-2

"C. The Buyer and the Seller mutually agree:

"2. That, upon the expiration of one year from the date hereof, the Seller and the Whiting Corporation, respectively, shall have the right to sell in the open market or to otherwise dispose of as they may see fit all such items from their respective stocks of stokers, stoker parts, and sub-assemblies as have not theretofore been purchased by the Buyer pursuant to the terms of this contract."

The contract further provided that the parts would be stored by plaintiff at its expense and that plaintiff would furnish defendant a monthly account of those actually used, accompanied by remittance of the amount shown to be due.

After execution of the contract, the stock of parts was removed to the Superior, Wisconsin, plant of plaintiff. At the end of the year plaintiff had availed itself of only a portion of the inventory and, after an audit and reconciliation had been made of the number of parts used, plaintiff sent defendant a check covering the amount due for the stoker parts it had actually utilized. Meanwhile the parties had disagreed respecting the stoker parts plaintiff was obligated to buy within a year, plaintiff contending that the contract required only the purchase of parts actually used during the first year and defendant insisting that under the provisions of paragraph B-2, all "reasonably usable" parts were to be purchased within the first year, irrespective of whether they were actually taken within that period. This controversy led to the institution of the declaratory judgment action.

The District Court held the contract to be ambiguous and, after resort to evidence dehors the instrument, found that the parties intended by paragraph B-2 to require plaintiff to purchase only "that portion of the remainder of said stoker parts which the plaintiff could reasonably utilize *within one year from September 2, 1944."* (Emphasis added.) The court found further that defendant's acceptance of the check sent by plaintiff in payment for parts actually used during the first year constituted an accord and satisfaction of the disputed liability of plaintiff to purchase and pay for, within one year, all the reasonably usable parts.

The defendant contends that the contract is without ambiguity and, hence, that parol evidence as to its meaning was improperly received and that the check sent by plaintiff to defendant at the end of the first year, being merely payment for parts actually used during the year, did not constitute an accord and satisfaction of disputed liability.

Paragraph B-2 of the contract obligated plaintiff to "purchase and pay for within one year from date hereof all of that portion of the remainder of said stock of parts which can reasonably be utilized by the buyer." We think these words can reasonably convey only one meaning; namely, that within one year, plaintiff was to purchase and pay for all parts that it could reasonably utilize, irrespective of whether the parts were actually used during the first year or thereafter. But plaintiff contends, and the trial court agreed, that, when read in conjunction with other paragraphs of the contract, paragraph B-2 is ambiguous.

A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions; it is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. 17 C.J.S., Contracts, § 294, and cases there cited. Contracts are not ren-

---

[1] Part of the inventory in defendant's possession belonged to the Whiting Corporation. While that corporation did not join in the contract, its interest in its inventory was protected by provisions placed in the contract for its benefit; i.e., that the buyer would purchase Whiting's inventory "within a reasonable time."

dered ambiguous by the mere fact that the parties do not agree upon their proper construction. National Pigments & Chemical Co. v. C. K. Williams & Co., 8 Cir., 94 F.2d 792; Andrews v. St. Louis Joint Stock Land Bank of St. Louis, 8 Cir., 107 F.2d 462, certiorari denied Cantley v. Andrews, 309 U.S. 667, 60 S.Ct. 592, 84 L.Ed. 1014, rehearing denied, Id., 309 U.S. 697, 60 S.Ct. 711, 84 L.Ed. 1036. An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning. Anderson & Kerr Drilling Co. v. Bruhlmeyer, Tex.Civ.App., 115 S.W.2d 1212. A possibility of doubt is not sufficient, for it is out of such possibilities that controversies arise. It is the duty of the court to ascertain by judicial interpretation, not whether a doubt may be asserted, but whether any ambiguity really exists. Northwestern University v. Hamberg, 237 Ill. 185, 86 N.E. 734. Similar judicial expressions are legion, and may be shortly summarized by saying that a contract is ambiguous when the language used is reasonably susceptible of more than one meaning. Ultimately, the question of whether an ambiguity exists is to be determined by the court as a question of law. 17 C.J.S., Contracts, § 617; Golden Gate Bridge & Highway Dist. of California v. United States, 9 Cir., 125 F.2d 872, certiorari denied, 316 U.S. 700, 62 S.Ct. 1298, 86 L.Ed. 1769.

■ With these elementary principles in mind, we turn to a consideration of the pertinent parts of the instrument as a whole to determine whether the parties employed any language which results in making paragraph B-2 ambiguous.

In paragraph A-2, the seller gave the buyer the option to purchase, within one year, the remainder of the parts. It seems obvious that there is nothing inconsistent between this right of plaintiff to purchase all the inventory and the requirement of paragraph B-2 that it must purchase all of the reasonably usable parts by the end of the first year. One paragraph gives plaintiff the right to make a maximum purchase and sets the time during which it may be completed; the other imposes a duty on plaintiff to purchase a minimum and fixes the time within which this must be done.

Nor is the covenant of the buyer in paragraph B-4 to refrain from manufacturing or purchasing any stoker parts "until the seller's stock of parts which can reasonably be utilized by the buyer shall have been completely exhausted," inconsistent with paragraph B-2. On the contrary, it would seem to negative clearly any interpretation which would reduce plaintiff's obligation to purchase less than all of the inventory that it could reasonably utilize. Plaintiff, having agreed to provide parts and service to maintain the stokers previously sold by defendant, in order to perform, necessarily had to have a supply of parts, and, being forbidden to make them or purchase them elsewhere, its only source of supply was the inventory of parts referred to in paragraph B-2. We think that the only reasonable conclusion is that paragraph B-4 was inserted to insure the sale of all of the inventory that was reasonably usable, and that it is complementary to, rather than inconsistent with, paragraph B-2.

Paragraph C-2 gives to defendant the right, after one year, to sell any parts that had not previously been purchased by plaintiff. Again, we are unable to see that this option is in any wise inconsistent with plaintiff's obligation to purchase all the usable parts during the first year. From paragraph B-2, it is evident that the parties anticipated that there would probably be some parts which plaintiff could not reasonably utilize and that plaintiff was not obligated to purchase any obsolete inventory. Since defendant had agreed to refrain from manufacturing or selling similar stokers for a period of 30 years, it seems only reasonable that defendant should have the benefit of a provision insuring its right to dispose of all parts not reasonably usable by plaintiff. Thus, we have paragraph B-2, clearly obligating plaintiff to purchase all of the usable inventory, and other paragraphs which, when given a reasonable construction, are not inconsistent with the obligation imposed by that paragraph. We conclude that the trial court erred in holding the contract ambiguous.

■ We turn to the finding that the check mailed by plaintiff to defendant on November 2, 1945, constituted an accord and satisfaction of the disputed liability of plaintiff to purchase all of the usable inventory. The check was accompanied by a letter, which read:

"Gentlemen:

"Our auditors, Eisner and Lubin, have now completed their audit for the fiscal period ending August 31, 1945 and in accordance with their reconciliations we are forwarding an additional check of $6533.75, which brings our account with you in complete accord with the results of the audit.

"Considering the confusion and difficulties attended upon transferring this inventory to Superior in a very short period of time, with faulty records and lack of experience on our part, and lack of co-operation on your part, we do not consider this difference between the amount paid you and the amounts disclosed by the audit at all surprising; as a matter of fact, it is approximately, 5% in error of the total amount involved, which is not bad considering the circumstances.

"Also, regardless of the fact that you have not paid for any part of the audit, we are enclosing the auditor's summary of usage of stoker parts which also indicates the balance of inventory belonging to you at August 31, 1945.

"Kindly acknowledge receipt of the check and this accounting."

It is clear from the record that a dispute had arisen between the parties as to the exact amount of the inventory that plaintiff had actually used within the year. Hence, plaintiff had caused an audit to be taken. This disclosed the true amount of parts used, and the check sent to defendant covered and purported to cover only this amount. It has never been contended that the check was for more than what was due for the parts that had actually been used. Paragraph B-8 required plaintiff to account and pay for inventory used each month. Under the contract, the audited amount was due and owing, irrespective of any dispute as to plaintiff's liability under paragraph B-2. Nowhere in the letter was there any intimation that the check was being tendered in satisfaction of plaintiff's liability under the latter paragraph. This letter constitutes the only evidence in the record upon which the finding could be based.

■ We think this is far short of the requirements of an accord and satisfaction. As the court said in Adams, Inc. v. Astoria Box Co., 249 Ill.App. 174, at page 179: "An accord and satisfaction must be based upon a compromise in good faith of unliquidated or disputed demands where there is an honest difference between the parties as to the amount due. Farmers' & Mechanics' Life Ass'n v. Caine, 224 Ill. 599, 79 N.E. 956. It must be the compromise of a demand, the validity of which is disputed in good faith (citing cases). *The payment should be offered in such a manner or accompanied by such acts or declarations as amount to a condition that if the party to whom it is offered takes it, he does so in satisfaction of his demand.* Canton Union Coal Co. v. Parlin & Orendorff Co., 215 Ill. 244, 74 N.E. 143, 106 Am.St.Rep. 162. There were no words indorsed on the check in question to show that it was given in full settlement of the account and there was nothing in the statement presented with the check which tended to inform appellee that if he accepted the same it was in full settlement of his claim for commissions. * * * The defense of accord and satisfaction cannot be sustained." (Emphasis added.)

In McKenna Process Co. v. Blatchford Corp., 304 Ill.App. 101, at page 103, 25 N.E. 2d 916, 922, the court said: "When a check is enclosed with a statement of account, and there is nothing to show that it is tendered and accepted as payment in full of all demands, the acceptor is entitled to retain it and to recover for the balance due on the account. Sargent Lumber Co. v. J. W. Wells Lumber Co., 168 Ill.App. 581. There must be something to inform the creditor by the act of accepting a less amount than he thinks he is entitled to, that he is making an agreement to accept payment in full."

No case cited by plaintiff tends to support its assertion of an accord and satisfaction, because, in each case cited, the

debtor made it clear, either by notation on the check or by accompanying letter, that acceptance of the check constituted full payment of all disputed claims. Such is not our case. Here, the check was for money which was due under any theory, and neither the check nor the letter accompanying it made any mention of the dispute under paragraph B-2. Under these circumstances, we find no basis in evidence for a finding that acceptance of the check constituted an accord and satisfaction. Knight Templars' & Masons' Life Indem. Co. v. Crayton, 209 Ill. 550, 70 N.E. 1066.

The judgment is reversed with directions to proceed in accord with this opinion.