Charlie BRIGGS, Lee Briggs, and Robert L. Briggs, Jr., Dale Shaffer Briggs and Charles W. Briggs, Executors of the Estate of R. L. Briggs, deceased, Plaintiffs in Error,

v.

H. WAGGONER and John Warden, Defendants in Error.

No. 39546.

Supreme Court of Oklahoma.

May 8, 1962.

Rehearing Denied July 24, 1962.

Application for Leave to File Second Petition for Rehearing Denied

Sept. 11, 1962.

Finch & Finch, Sapulpa, for plaintiffs in error.

Arthurs, Blackstock & McMillan, Bristow, for defendants in error

BERRY, Justice.

On November 30, 1955, R. L. Briggs, hereafter referred to as "intervenor", granted to George Rahal, hereafter referred to as "Rahal", oil and gas leases covering the SE/4 of SE/4 and SW/4 of SE/4, Sec. 35, T. 19N, R. 8E, Creek County, Oklahoma. Rahal promptly drilled 6 test wells for oil and gas on the land which were completed as producing wells. Rahal operated the wells (leases) for approximately 4 years. It appears that he concluded that none of the wells would produce oil or gas in paying quantities and that the casing and other personal property on the wells should therefore be salvaged and the wells plugged.

On April 14, 1959, Rahal sold the casing and other personal property used in producing the wells upon the leases to H. Waggoner and John Warden, defendants in error, who are hereafter referred to as "plaintiffs" or by name. The sale was evidenced by a bill of sale which named H. Waggoner as the sole vendee. It was stated in the bill of sale that the vendee would plug all wells in "strict accordance with applicable laws". It is agreed that plaintiffs intended to promptly salvage the personal property on the leases and plug all wells.

After giving notice of intention to plug the wells, plaintiffs attempted to go upon the leases for the purpose of salvaging the personal property thereon. Plaintiffs in error, Charlie Briggs (the same person as C. W. Briggs) and Lee Briggs, hereafter referred to as "defendants" or by name, threatened bodily harm to those who proposed to begin the salvage operations. Defendants are the sons of intervenor.

Plaintiffs thereafter instituted this action and sought to enjoin defendants from interfering with their proposed salvage operations.

After permission to intervene had been granted, intervenor filed an answer to plaintiffs' petition and a cross-petition in which he sought judgment against plaintiffs for $20,000.00 as damages sustained because of plaintiffs' alleged failure to properly operate and produce the wells on the leases, and the further sum of $500.00 as a reasonable fee for his attorneys. The defendants filed an answer wherein, so far as material to the issues here presented, they denied plaintiffs' right to salvage the personal property on the leases. In appropriate pleadings plaintiffs denied intervenor's asserted right to damages and an attorney's fee.

After the case was at issue, C. W. Briggs, as agent for intervenor, entered into negotiations with plaintiffs covering the purchase of the leases. In an effort to effect a sale of the leases, plaintiffs obtained an assignment of the leases from Rahal and other persons who owned an interest therein. The assignment was dated April 22, 1959. Thereafter and on August 15, 1959, C. W. Briggs, as agent, and H. Waggoner entered into a contract denominated "Contract of Option" covering purchase of the leases for $35,000.00. This instrument was approved by John L. Warden on the mentioned date. It was contemplated that upon the provisions of the contract being complied with, all persons seeking affirmative relief herein would dismiss their respective actions. The trial court found that the Briggs failed to comply with the provisions of the contract, which finding is sustained by competent evidence.

Following purchase of the personal property on the leases, plaintiffs operated and produced the leases.

In each of the leases it was provided that the leases should remain in force for a stated period "and so long thereafter as oil or gas, or either of them, is produced from said land by lessee *in commercial and paying quantities to the lessor"; that "Lessee shall* have the right at any time to remove all machinery and fixtures on said premises, including the right to draw and remove casing"; that the right to assign their respective interests was reserved by each party to the lease.

Intervenor (lessor) caused the lease to be drafted and it was at his instance that the above italicized language was typed therein. The remainder of the language above quoted was a part of the printed form upon which the lease was drafted.

Following trial of case to the court, judgment was entered enjoining defendants and intervenor from interfering with the removal of the casing and other personal property from the lease, and intervenor's claim for damages and attorney fees were disallowed. From order of the trial court denying defendants' and intervenor's motion for new trial which was directed to the judgment, they perfected this appeal.

The issues or questions presented by the pleadings and evidence on the merits can be summarized thusly: (1) Does the provision of the leases to the effect that same must be produced so long as the lessor realizes a profit prevail and must the leases therefore be produced at a loss to those owning the working interest? (2) If the answer to the posed question is "yes", will equity grant relief from the provision? (3) Does the mentioned provision conflict with the provisions of the lease to the effect that lessee may at any time remove the casing and other personal property from the leases, and if it so does this, create an ambiguity that should be resolved in accordance with testimony showing the intent of the parties to the lease?

We are of the opinion that for reasons hereafter stated the question first posed must be answered in the negative and the last question in the affirmative.

 Plaintiffs urge that where part of a contract is typed and part is printed, and the written and printed parts are inconsistent, the typed portion controls. This is a well-established rule. See 12 Am.Jur.

"Contracts", Sec. 253, p. 797. But another equally well-settled rule is that in construing a contract, all portions thereof will be considered, which rule applies where typed portions of a contract cannot be reconciled with printed portions thereof. At p. 798, Sec. 253, "Contracts", 12 Am.Jur., this is said:

"* * * The construction is to be made on a consideration of the whole instrument, and not on one or more clauses detached from the others; and the principle applies as well to instruments partly printed and partly written, as to those wholly printed or wholly written. * * *"

See also Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106, 110, and Ohio & Michigan Coal Co. v. Clarkson Coal & Dock Co. (6th Cir.), 266 F. 189, 192.

The above mentioned rule, in our opinion, is particularly applicable where giving effect to the typed portion of a contract over a conflicting printed portion thereof would tend to bring about a harsh and oppressive condition. It is apparent that the matter of requiring a lessee to produce a lease at a substantial loss is both harsh and oppressive and may eventually lead to a result not intended by the parties. By force of statute, a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. See 15 O.S.1961 § 152.

Defendant urges that lessor caused the lease to be prepared and for said reason any uncertainty in the lease should be construed against lessor. See 15 O.S.1961 § 170. Such is the law.

■ If the rule contended for by lessor is applied, we must in effect strike the provision of the lease relied upon by lessees and, conversely, if the rule contended for by lessees is applied we must in effect strike the provision upon which lessor relies. To our way of thinking, the practical solution is to consider parol evidence showing the

meaning that the parties intended should be applied to the conflicting provisions.

The provision of the lease to the effect that the lessee should have the right to remove the personal property at any time is explicit and clear. This provision standing alone does not make the assertion of such right depend upon whether the leases can be operated at a profit to the owners of the working interest. In discussing the force and effect of this provision, defendants and intervenor say that under the rule announced in Okmulgee Supply Corporation et al. v. Anthis et al., 189 Okl. 139, 114 P.2d 451, the provision will not be construed as granting to a lessee the right to remove personal property before production in commercial or paying quantities has ceased. They, therefore, urge that the provision is wholly without application.

We held in substance in the cited case that there was an implied covenant on the part of the lessee to produce the lease so long as it produced oil and/or gas in paying quantities; that when the provision relative to removal or personal property was construed in the light of such covenant, said provision would not be construed as granting to lessee such right so long as commercial production could be had from the lease.

There is competent evidence in the instant case that no well on the lease would, under proper management, produce a sufficient amount of oil (no gas was produced from the well) to return a profit to the $\frac{7}{8}$ths working interest over and above cost of producing. The evidence shows that during the last several months that Rahal operated the lease the owners of the working interest lost from $75.00 to $80.00 a month. After plaintiffs began operating the lease the production decreased and each month they lost more than Rahal and his associates. As of date of trial, two of the wells produced no oil and the combined production from the remaining four wells did not exceed 6 barrels a day.

Upon the leases ceasing to produce in paying quantities to the lessees an implied covenant on their part to continue to pro-

duce the leases terminated and the pronouncement of the Okmulgee Supply Corp. case became 'inapplicable. We, therefore, find a clear and explicit provision of the lease that lessees will produce the lease after production in paying quantities to them has ceased and an equally clear and explicit provision that lessees had the right to remove personal property from the lease upon failure of same to produce in paying quantities. These provisions are repugnant and conflicting and the intent of the parties on the issue under consideration cannot be gathered from the four corners of the contract. In brief, we are of the opinion that the contract is ambiguous. See Whiting Stoker Co. v. Chicago Stoker Corp. (7th Cir.), 171 F.2d 248, and cited cases. It was stated in the cited case that a contract is ambiguous where "it is reasonably or fairly susceptible to different constructions" or where the language used has a "double meaning". See also 17 C.J.S. Contracts § 294, p. 682.

■ It has long been settled law in this jurisdiction that parol evidence is admissible to explain an ambiguous contract and show the intent of the parties thereto. See Hawkins v. Mattes et al., 171 Okl. 186, 41 P.2d 880. The third paragraph of the syllabus to the cited case reads as follows:

"Where a contract is ambiguous and the court is unable to ascertain the intention of the parties from the face of the instrument itself, then extrinsic parol evidence is admissible to explain it and to give the court and jury the benefit of what was intended by the parties when the contract was entered into, so long as such evidence does not tend to vary or modify the written instrument itself."

■ Intervenor testified by way of deposition over his counsel's objection that the purpose of the typewritten phrase relative to lessee producing the lease as long as oil or gas was produced in paying quantities to intervenor (lessor) "was to protect (him) as long as oil and gas would pay for operating same"; that it was his understanding

or intention that the leases were to continue as long as production would pay operating expenses under proper operations.

This testimony clearly tends to sustain the trial court's finding that neither Rahal nor plaintiffs were under a duty to produce the lease at a loss to the owners of the working interest and that when production in commercial quantities ceased, Rahal or plaintiffs, as assignees of the leases, were privileged to salvage the personal property thereon.

Intervenor and defendants make several contentions that do not go to the merits of the case. They contend that if plaintiffs had a cause of action it was to reform the lease and that under the facts they are not privileged to maintain an action for injunctive relief. We are unable to agree.

As pointed out, the trial court was justified in finding that under the provisions of the lease plaintiffs were privileged to remove the casing and other personal property on the leases at the time they asserted said right. It follows that an action to enjoin defendants from interfering with such right rested in them. See Rennie v. Red Star Oil Co. et al., 78 Okl. 208, 190 P. 391.

Intervenor contends that the cause of action for damages set up in his cross-petition presented a cause of action triable to a jury and that the court erred in rejecting his demand for a jury.

The trial court found that as reflected by the minutes of the court clerk, intervenor waived a jury trial. We find nothing in the record that tends to show that this was an erroneous finding.

Intervenor contends that the trial court erred in refusing to grant his motion for continuance.

■ The motion for continuance which was based upon the proposition that intervenor's illness prevented him from attending the trial, was not filed until the day of the trial. Plaintiffs caused intervenor's deposition to be taken several months prior to trial. At that time, intervenor testified that because of his illness he probably would

not be able to attend the trial; that up to that time "the only damages (he) had sustained (were), of course, worrying and seeing that they were trying to plug out (his) lease". It appears that the illness was fatal. Following his death, this action was revived in the name of his personal representatives who appear here as plaintiffs in error. In denying the motion, the trial court did not abuse the discretion that rested in it.

 Defendants and intervenor contend that the trial court erred in permitting intervenor's deposition and a portion of Rahal's deposition to be read in evidence. This contention is based upon the proposition that it was not shown that for some legal cause the attendance of said persons could not be produced.

It stands admitted that intervenor's illness prevented him from attending the trial and the record shows that Rahal died prior to the trial. We, therefore, find no substantial merit in the foregoing contention.

Intervenor argues that if the judgment below is here affirmed, we should modify it so as to permit him to purchase personal property upon the lease at its market value or permit him to purchase the casing only at said value; that to so find and adjudge would enable intervenor to operate the lease which he believes will produce oil in commercial quantities.

As we understand the evidence, plaintiffs offered to sell to intervenor and defendants their interest in the lease at a price agreeable to the latter and the sales agreement was reduced to writing. This was the "Contract of Option" heretofore referred to. Intervenor and defendants, however, elected not to purchase. In fact, intervenor testified that because of his health he was not "interested" in buying plaintiffs' interest. For this reason we do not feel that the last mentioned contention is well taken.

While defendants and intervenor urge that the trial court erred in other particulars, a careful examination of the record has convinced us that said contentions are without merit.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON and IRWIN, JJ., concur

DAVISON and JACKSON, JJ., concur in result.