GERATY v. NATIONAL ICE CO.

(Supreme Court, Appellate Division, First Department.   April 9, 1897.)

1. MASTER AND SERVANT—LIABILITY TO THIRD PERSONS—SCOPE OF EMPLOYMENT.

   The owner of an ice wagon, from which a piece of ice fell because it was defectively loaded, is liable to a person injured thereby, though the driver had deviated from his proper route for a purpose of his own, but at the time of the accident had accomplished that.purpose, and was proceeding to the place where his employment required him to go.

2. EVIDENCE—ADMISSIONS—RECITALS IN ORIGINAL COMPLAINT.

   A recital of facts in an original complaint verified by plaintiff's guardian ad litem cannot be considered on the trial, where such recital was contradicted by the amended complaint, and the guardian ad litem had no personal knowledge of the facts, and was not called as a witness.

   Van Brunt, P. J., dissenting.

Appeal from trial term, New York county.

Action by Margaret Geraty, an infant, by James A. Geraty, her guardian ad litem, against the National Ice Company, for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William Allen Butler, for appellant.
G. W. Smith, for respondent.

RUMSEY, J.   On the 25th of August, 1895, the plaintiff, a child aged nine years, while crossing on Forty-Third street from the north

to the south side, a short distance west of Third avenue, was struck by a heavy cake of ice, which fell upon her from the defendant's wagon, and was very seriously injured. In an action brought to recover damages for these injuries, she had a verdict, upon which this judgment was entered, and the court denied the motion for a new trial. The appeal from that determination coming on to be heard here is based largely upon the proposition that, at the time this injury happened to the plaintiff, the defendant's employés who were in charge of the wagon from which the ice fell were not engaged in the master's business, so that it was not liable for the condition of affairs by means of which the accident came to occur. Several different points are argued by the appellant's counsel upon this branch of the appeal, in each of which this question is presented in some way or other, so that the determination of this question will practically decide the appeal. The facts, so far as this question is concerned, are in small compass. Sweeney was the driver and McQuade the helper upon one of the defendant's large trucks, which was used in the transportation of ice from the defendant's storehouse to various places where it was needed. On the morning of the 21st of August, 1895, these two men started with their truck, laden with ice, from the storehouse of the defendant to deliver the ice to the Grand Central Station. The ice was so loaded upon the truck that it was likely to slip off in case of a sudden movement of the truck, and there was, as the jury found, evidence which warranted them in concluding that the ice was negligently loaded, and that this negligent loading of the ice was the cause of the injury to the plaintiff. The ice yard of the defendant was on the corner of Lexington avenue and Forty-Seventh street, and the direct route to the destination of the truck was down Lexington avenue to Forty-Second street, then west on Forty-Second street to Vanderbilt avenue, then up Vanderbilt avenue to the place of delivery. The route actually taken was down Lexington avenue to Forty-Third street, thence through Forty-Third street to Third avenue, where the truck was stopped for some short period of time. It was at that place that the accident happened, and just what occurred there is the subject of conflicting testimony. The driver of the truck, and McQuade, the helper, testify that they stopped their horses and truck near the corner of Forty-Third street and Third avenue while they went to an adjoining restaurant to get their breakfast. They say that when they came back they got upon the truck, and started to go to the place where the ice was to be unloaded; that the truck was started with a jerk, as a consequence of which a cake of ice, lying loose upon the top of the load, slipped off, and struck the plaintiff, who was running along past the back end of the wagon. This testimony as to the way in which the accident occurred was corroborated by several witnesses. On the other hand, a witness for the defendant swore that these two men, after stopping the truck near the corner of Third avenue and Forty-Third street, began to deliver ice to a small dealer, whose place of business was at that point; and, as they were taking a cake of ice out of the wagon, the tongs slipped, and it fell upon the plaintiff, and thus the injuries were inflicted.

The defendant requested the judge to charge that, if the jury be-

lieved that Sweeney and McQuade were unloading ice from the truck at the time of the accident, outside of any duty on their part to the defendant, they must find for the defendant; and also that if they believed that the driver and his helper, for the purpose of unloading ice or making a delivery at any place other than the Grand Central Depot, went to the place of the accident in question, and while there so conducted themselves that an accident happened to the girl, the defendant is not responsible for such acts, and the jury must find for the defendant. The judge refused to charge either of these requests, as he did several others involving similar propositions. But he did charge the jury that if this accident happened while the driver was actually handling ice, and taking it out of the wagon at that particular point, the plaintiff could not recover, because there was no evidence of any negligent handling at that time. The defendant insists that it was entitled to a more particular charge upon this subject, and the question is whether this contention of the defendant is sustained by the law. It is the rule, no doubt, that a master is not necessarily relieved from responsibility for an injury resulting from the negligence of his servant simply because the servant is at the time acting in disobedience to the master's order. The question in every case is whether the act he was doing was one in prosecution of his master's business; not whether it was done in accordance with his instructions. If the act was one which, continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever negligence might take place during its performance, although the servant, in doing it, was not obeying the instructions of the master, or although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention, at the same time, of pursuing his master's business. Quinn v. Power, 87 N. Y. 535, 539. The rule, as laid down by the latest cases in the English courts, is that a master is responsible for an injury resulting from the negligence of his servant while driving his cart, provided the servant is at the time engaged in his master's business, even though the accident happens in a place to which his master's business did not call him. But if the journey upon which the servant starts be wholly for his own purposes, and without the knowledge or consent of the master, the latter will not be liable. Mitchell v. Grassweller, 13 C. B. 237; Storey v. Ashton, L. R. 4 Q. B. 476. This also is the rule laid down in this state. Cosgrove v. Ogden, 49 N. Y. 255. In that case it is said that the test of the master's responsibility for the act of his own servant is whether the act was done while the servant was engaged in the prosecution of the business which he was employed to do. In this case the act that the servant was employed to do was to take this ice from the warehouse to the Grand Central Station. The route taken was not the direct route, but that fact of itself does not relieve the master from his liability. Within the cases above stated, the liability still continues unless the deviation is made, not in the prosecution of the master's business, but for some different and other purpose. The distinction is well illustrated in the cases of Cavanagh v. Dinsmore, 12 Hun, 465, and Sheridan v. Charlick, 4 Daly, 338, in

which the servant, having been directed to use his master's horse and carriage for a particular purpose, and then to put it up in the stable, instead of doing so, after the master's business had been performed, went off in another direction in the prosecution of his own affairs, and for his own purposes. In those cases it was held that, the enterprise undertaken by the servant during which the accident happened being solely for his own purposes, the defendant was not responsible for it. In this particular case, so long as Sweeney and McQuade were engaged in taking this ice to the Grand Central Station they were engaged in the prosecution of the master's business, and it was liable for their acts. The liability ceased, if at all, only when they were not engaged in taking the ice to the place where they were directed to take it.

According to the evidence of the defendant's witness, they stopped near the corner of Forty-Third street and Third avenue for the purpose of unloading some of this ice. Up to that time they had been proceeding in the business in which they were engaged. While they stood there, unloading the ice, if they did do so, they were undoubtedly not engaged in the master's business, and were acting in their own behalf, and at that time it is quite clear that the master was not liable for the unloading in which they were engaged. The jury were so instructed by the court. They were told that, if the accident happened while these men were unloading the ice, the defendant was not responsible. It is true that the reason given by the court was not the one insisted upon by the defendant, but that was a matter of no importance. The material fact was that, if the jury found that the accident was caused by unloading the ice, that was the end of the liability, so far as the defendant was concerned; and, if the defendant had the benefit of that instruction, it had no right to complain with regard to the reasons which were given for it. But the request for a charge on the part of the defendant went further than that. It was that, if the accident happened at that place, the defendant was not responsible, without regard to the question whether Sweeney was unloading ice or not. This request, we think, went too far. There could have been but two ways, under the testimony, in which this accident occurred. One was by the slipping of the ice from the tongs while it was unloading, and the other was because it slipped off of the wagon after Sweeney had started on his way to the Grand Central Station. The defendant was sufficiently protected by the charge if the jury found that the accident was caused in the way first mentioned. We think that the defendant was not entitled to be relieved from liability if the accident happened after Sweeney had taken his place upon the wagon, and resumed his course towards the Grand Central Station, and the accident was caused by the slipping of the ice off from the wagon. At that time, Sweeney, whatever may have been his object in deviating from the direct route, was again proceeding to deliver the ice. He had accomplished whatever purpose he intended to accomplish by the deviation, and had resumed the execution of the work which the defendant had intrusted him to do. The essential conditions at that time were the same as they would have been had

he gone on the direct route.  The ice which had been loaded upon the wagon improperly still continued to be thus loaded, and there was no more reason to suppose that injury would happen on account of it at that place than if he had pursued the direct route.  If he had been forced by a blockade of the streets to turn out of the direct route, and go in the direction in which he did go, no one would doubt that the master would be liable, because he would have been engaged, when he was moving in that direction, in the transportation of the ice to the place where he was intended to take it. But that is precisely the thing that he was doing, and his doing it through this particular street did not add at all to the liability of the defendant, and did not enlarge the danger which any passer-by encountered from the way in which it was loaded.  If Sweeney and McQuade had abandoned the wagon at the corner of Third avenue and Forty-Third street, and another servant had been sent to take it from that place to the place where the ice was to be unloaded, no doubt the defendant would have been liable for what happened. Why?  Because they were carrying the ice to its place of destination in the prosecution of the master's business.  But that is precisely what Sweeney was doing.  It cannot be that if a servant makes a deviation from his route for his own purpose, on account of which the master ceases to be liable, there is no assumption of liability again until the servant finally reaches his destination.  If that were so, the master would not be liable, although the servant was proceeding by the most direct route to his destination after the purposes of his deviation had been accomplished.  We think that cannot be the rule, but that, if the master's liability has been suspended while the servant has deviated from the route for his own purpose, and he has again resumed the prosecution of the master's business, the liability again attaches if the conditions which then existed have not been altered by the act of the servant, so that some new negligent cause has intervened, for which the master was not originally liable.  That is not this case.  At the time when Sweeney resumed his journey at the corner of Third avenue and Forty-Third street, the load was in the same defective condition as it was when he started, and there was the same reason to anticipate that an accident would happen as there was when he left the yard in the first place.  No act of Sweeney's occuring during the deviation had operated in the slightest degree to increase the danger of harm from the negligent loading, and therefore, when he again assumed to go on his master's business after the deviation, there had been no increase of danger, arising from his negligent act, by reason of which the probability of accident had been enhanced.  The original defect, and that alone, was then, as before, the thing to be feared, and for all practical purposes the same conditions existed that existed when Sweeney had started from the yard.  The ice was defectively loaded, and he was proceeding with it to the place where it was to be unloaded.  If there had been a suspension of liability, that suspension had come to an end, because he had assumed again the prosecution of his master's business.

It appeared in the case that when the action was first brought

there had been served a complaint, verified by the guardian ad litem, alleging upon information and belief that the accident occurred while Sweeney was throwing the cake of ice from the wagon, and by reason of his carelessness while so engaged. The amended complaint alleged that the accident occurred while the ice was slipping from the wagon. The guardian ad litem, who verified the original complaint, was not present at the time the accident occurred, and was not sworn as a witness upon the trial. The original complaint was read to the jury, but the court charged them, in response to a request of the plaintiff, that the fact that the guardian ad litem in the original complaint stated facts in regard to the way the accident happened differently from the way he stated them in the amended complaint could not be considered by the jury upon the question how the accident happened, or upon the question whether the men were taking off the ice or not. To this charge the defendant excepted, and he now insists upon that exception as well taken. We do not agree with him. The original complaint contained a verified statement of the guardian ad litem. It did not contain any statement of the plaintiff herself. It could not be used to contradict the plaintiff's testimony, because she had not verified it, and there was nothing to show that she was in any way responsible for it. It was not material to contradict the guardian ad litem, because he was not sworn as a witness, and there was no pretense that he had any personal knowledge as to how the accident occurred. It was, therefore, entirely immaterial for any purpose so far as it might affect the evidence given upon the trial. Having been replaced by the amended complaint, it had ceased to be of any effect for any other purpose than as a declaration which might be used to contradict the person who had sworn to it if the occasion arose. As that occasion did not arise, it was not material, and the charge of the court was correct. Upon the whole case, we think there was no error in the rulings of the court, and the case was properly disposed of by the jury upon the evidence.

The judgment and order should be affirmed, with costs.

BARRETT, O'BRIEN, and INGRAHAM, JJ., concur.

VAN BRUNT, P. J. (dissenting). I cannot concur in the conclusion arrived at by the majority of the court in the case at bar. Before the court charged the jury, the defendant's counsel requested the court to charge:

"That, if the jury believed from the evidence that the driver, Sweeney, and his helper, McQuade, were unloading ice from the truck opposite the Italian Vitello's basement at the time of the accident, outside of any duty on their part to the defendant, they must find for the defendant."

This request was refused. It is conceded by the prevailing opinion that the defendant was entitled to have this question submitted to the jury. But it is urged that the refusal of the court to charge as contained in the record was cured by the charge which was subsequently delivered, and that the jury were told that, if the accident

happened while these men were unloading the ice, the defendant was not responsible; the court further saying:

"It is true that the reason given by the court was not the one insisted upon by the defendant, but that was a matter of no importance. The material fact was that, if the jury found that the accident was caused by unloading the ice, that was the end of the liability, so far as the defendant was concerned; and, if the defendant had the benefit of that instruction, it had no right to complain with regard to the reasons which were given for it."

It seems to me that there are two answers to this proposition: First, that the jury might have found the reason given not true in fact, the court basing its instruction to the jury upon the assumed fact that, if the drivers were unloading the ice at the time of the accident, the plaintiff could not recover, because there was no evidence of any negligent handling at that time. The evidence in respect to the unloading of the ice showed that, if the accident happened in connection with such unloading, it was caused by the slipping of the ice from the tongs of one of the workmen, and this, unexplained, showed negligence. The instruction to the jury, therefore, was upon an assumption as to the condition of the evidence which did not exist; and the jury may very well have come to the conclusion that, if there was evidence of such negligence, the direction did not apply. The reason given is only stated parenthetically, and qualified the charge. The defendant was entitled to an absolute, unconditional instruction to the jury upon this point, and not one qualified by a reason which was not justified by the evidence. And, furthermore, the learned court charged:

"Upon that testimony the jury is to say how the wagon was loaded at the time it went out from the defendant's yard on the morning in question. That seems to be the principal question in the case; the plaintiff's claim being that it went out loaded in a defective way, and without any protection to prevent the top cakes from slipping; the defendant's evidence being that it went out loaded in the proper way so as to prevent those cakes from slipping. That question is at the outset of the case, and upon your finding upon that depends your finding the case."

The jury were, therefore, instructed by the court that their verdict did not depend upon the question of unloading the ice, but depended entirely upon the question as to whether the load was properly put upon the wagon. It is true that it is in a subsequent part of the charge that the instruction in regard to unloading is given. But the charge upon the question as to whether the loading was defective or not was in no way qualified, and the jury, under it, were justified in finding the verdict for the plaintiff if they found that the wagon had been defectively loaded, even though the accident had occurred while they were unloading the ice in front of the Italian's store. It seems to me that by the failure in any way to qualify the previous parts of the charge, and by the giving of an erroneous reason for the subsequent instruction in regard to unloading, it is impossible to say that the jury were not entirely misled, or to determine which instruction the jury followed. It has been too often held to need the citation of authorities that an instruction given in a subsequent part of the charge does not cure an error committed in a previous instruction.

But it is not necessary to rest upon this rule, because at the end of the charge the learned judge reiterates the proposition, and says:

"So that the question comes down to a conflict between these witnesses as to how that wagon went out loaded on that morning. If you believe that the wagon went out as testified to by Mr. McQuade and the driver, Sweeney, as they say they loaded it, with those top cakes of ice not protected by the wedge cakes at the back, so that in starting up the wagon the ice was likely to slip off, then the plaintiff has made out the allegations of the complaint that the ice slipped off and fell from the wagon."

The jury, therefore, went out with the instruction that the sole question upon which they were to pass was as to the loading of the wagon. These instructions were duly excepted to by the defendant. I fail to see that these exceptions can be avoided. The question was clearly presented to the court; the defendant's request was denied, and to its denial an exception was taken; and the instruction was given, not once, but twice, that the sole question was as to the loading of the wagon; and this was the last instruction given to the jury.

The judgment should be reversed.