508

SACRAMENTO SUBURBAN FRUIT LANDS
CO. v. KRAL.

No. 5853.

Circuit Court of Appeals, Ninth Circuit.

May 26, 1930.

Rehearing Denied July 13, 1930.

See, also, 41 F.(2d) 514.

Butler, Van Dyke, Desmond & Harris, of Sacramento, Cal., and E. P. Kelly, of Minneapolis, Minn., for appellant.

Ralph H. Lewis, George E. McCutchen, and Otis D. Babcock, all of Sacramento, Cal., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is one of a group of cases submitted together here in which the plaintiffs recovered judgments for alleged fraudulent representations made by appellant to induce them severally to purchase divers tracts of land in the Rio Linda district, near Sacramento. In its background and some of its aspects the case is similar to Sacramento, etc., v. Melin (C. C. A.) filed December 17, 1929, 36 F.(2d) 907. Below there was a judgment against the defendant company for $8,000 and costs, from which it prosecutes this appeal.

Appellant assigns eleven errors, those of which concerning the various proposed instructions are ruled by the Melin Case, and one relating to the comments of the court upon the testimony of the witness Traxler, which, for want of appropriate exceptions, we cannot consider.

The court, in its instructions, discussed the testimony of the witnesses. After referring to Mr. Davis, one of the plaintiff's witnesses, as an agricultural specialist, nearly two pages of the transcript are devoted to a discussion of his testimony. Among other things it is said:

"He quotes you authorities, men who have made a business of writing and teaching on the subject. * * * He tells you that, taking this land as it is, in connection with his own experience and his own teachings, it is not reasonably likely that a commercial orchard could successfully be grown on this particular land of the plaintiff. * * *

"Mr. Hyde testified for the defendant that he analyzed this soil, he and Mr. Twining shared samples; they each took a part of the same sample and analyzed it, and Mr. Twining found 75 per cent. more phosphoric acid than Mr. Davis, 75 per cent. more potash, than Mr. Davis, and he also found 33 per cent. more phosphoric acid than Mr. Hyde, out of the same sample, Twining did, and he found 3 per cent. less potash than Mr. Hyde did, some variation there between the two witnesses for the defense. One would assume a chemical analysis ought to be fairly accurate, and particularly in this field, relating to chemical action and reaction, where they are based on the same chemical analysis, one would think they would agree, but they seem to diverge; they diverge between themselves somewhat less; they differ from Mr. Davis. When experts differ, it is for you to say what the truth is. You are not bound by any expert's testimony, any

more than any other witness. You test it out by what is reasonable, what is likely, where will you get the truth. It is very apparent that these experts cannot all be right when they differ as widely as these. One would think it is apparent that the defendant's experts cannot be right when they differ between themselves 33 per cent. in respect to the element of phosphoric acid, anyway. And it is for you to say where the truth is."

" * * * So, as to the representation of value, if you find it was made, $400 an acre. Plaintiff's expert, Mr. Kerr, says it was worth $75 and $50 an acre only at that time; that is the test, market value; the market value is the test of value. On the other hand, Mr. Traxler, for the defendant, says it is worth $400 an acre. He says he is selling land out in that district, and that Rio Linda is adapted to commercial orcharding, and he is selling land for that price. You may ask yourselves whether he has an interest in keeping up prices, if he is thus selling lots, not only to get the money, but also to protect himself from like suits if his representations should turn out not to be accurate. You will test the testimony of the experts like any other witnesses; where they differ it will be for you to say whether you believe either or both, or which; you cannot believe both; upon all of the circumstances disclosed to you by the evidence you will determine what was the value of that land in 1926; that is the test, when the plaintiff bought it."

These instructions are argumentative and condemned by the rule stated in Sacramento Fruit Lands Co. v. Parker (C. C. A.) 36 F. (2d) 926. See, also, Sacramento, etc., v. Tatham (C. C. A.) 40 F. 894, this day decided.

■ It will be observed that in the instruction with regard to the testimony of Mr. Hyde and Mr. Twining it is stated that "it is apparent that defendant's experts cannot be right when they differ between themselves 33 per cent. in respect to the element of phosphoric acid." This instruction was unfair.

Mr. Twining and Mr. Hyde were in a reasonable agreement with reference to the content of the soil, and Mr. Davis' testimony was a wide departure therefrom. If any deduction was to be made by the court in regard to the contents of the soil from testimony of these three experts, it is evident that the preponderance of the evidence favors the conclusion of the two experts as against the single expert produced by the plaintiff. It appears, however, from the transcript that the analysis was made on a different basis. Mr. Davis testified for the plaintiff:

"I analyzed the samples by the so-called strong acid method, which is a recognized method of testing soil. It is designed to show that amount of plant food which could reasonably be expected to become available to the plant over a considerable period of years, as differentiated against the method of determination of total plant food which would give you everything that was there without respect to its solvency or availability. This strong acid method gives the potential plant food, I do not think it would give you the available plant food, because I think it would take out much more than available, but it would be the potential supply that would become available over a period of years."

Mr. Twining testified for the defendant that he took a number of samples and made a conglomerate or composite of them and divided them with Mr. Hyde. Each took a half, and each made a separate analysis. They did not work together. He testified:

"Speaking of the total of the acid soluble, these results are derived by two separate and distinct methods. In determining the total potash and phosphoric acid we use the method of the American Association of Official Agricultural Chemists, that is what we call the official method, and the only one that is recognized in experimental station work, etc., the official method. The association referred to has to do with Government chemists, most of the soil research work being done at such institutions. They employ the official method. Of course, there are other methods used by various plants, but they are not official methods. For instance, there is the diluted water solution, the diluted nitric acid solution, etc. There are a number of methods that are employed other than the so-called hydrochloric acid solution method for a certain purpose. The acid soluble method was used as a sort of a short cut determination of potash and phosphoric acid, but it is being rapidly discarded. We have no satisfactory method of determining what is the available amount of the elements in the soil. It varies in different soils and under different conditions. The total represents the potential amount, that is, if the soil is cultivated and properly prepared, that total amount is made available by different activities in the soil."

Mr. Hyde, a chemist testifying for the defendant, did not testify as to the method used by him in determining the amount of soluble potash and phosphoric acid. He did, however, give figures based upon the acid soluble potash and the acid soluble phosphoric acid. The witness Davis did not testify as to the total amount of potash or phosphoric acid in the soil. According to the testimony of both Hyde and Twining, which were in substantial agreement, the total potash in the soil was over 80,000 pounds per acre-foot, Hyde placing the total at 88,800 pounds and Twining at 80,000 pounds, while the amount of soluble potash per acre-foot, according to Hyde, was 14,400 and according to Twining was 14,000. With reference to the phosphoric acid Hyde placed the total amount in the soil at 3,360 pounds per acre-foot and Twining at 4,560 per acre-foot. It will thus be observed that Hyde and Twining agree with each other within .2 of 1 per cent. both as to the total phosphate and total phosphoric acid in the samples analyzed by them. They are in even closer agreement with reference to the soluble potash. The difference between them as to the soluble potash was .01 per cent. The difference between Hyde and Twining with reference to the soluble phosphoric acid is greater, .017 per cent., while Davis' testimony would indicate only about half the soluble potash testified to by Hyde and Twining. He fixed the amount at 7,720 pounds per acre-foot, and the difference in percentage between Hyde and Twining is only .01 per cent. and between Davis and Hyde is over sixteen times that amount. With reference to phosphoric acid, the difference between Davis and Hyde is almost the same as that between Hyde and Twining.

In considering this testimony, it should be observed that Davis did not testify to the total contents of the soil. His testimony was confined to a single test in which he used an acid or acids, but what acid or acids he used is not indicated by the testimony. It is obvious that the amount of plant food soluble in a given acid or mixture of acids will depend upon the nature of the acids. On the other hand, Twining testified that various acids were used, such as diluted nitric acid, hydrochloric acid, and stated that the acid soluble method was being discarded. He refers to the method of the American Association of Agricultural Chemists, but does not state what that method is. The other witness, Mr. Hyde, was a chemist, but it does not appear that his specialty was agricultural chemistry. In view of the fact that the methods used by Hyde and Twining, so far as disclosed by the evidence, may have been entirely different, the most significant fact in the testimony is the close agreement between the results of Hyde and Twining rather than the small difference between them and the great disparity between their testimony and that of the witness Davis. One obvious reason for this situation is that Hyde and Twining were dealing with practically the same sample, while Davis took his own samples under different conditions, and the soil may have been, indeed must have been, entirely different from that analyzed by Hyde and Twining. The instruction which we have quoted is particularly objectionable, for the reason that it states the defendant's experts cannot be right when they differ between themselves 33 per cent. in respect to the element of phosphoric acid, whereas, as it happens, the difference between each of the three witnesses is almost 33 per cent. on this item. Hyde has about 33 per cent. more than Davis, and Twining has about 33 per cent. more than Hyde. But this difference is less than 500 pounds per acre-foot, whereas the difference between Davis and Hyde and Twining on soluble potash is over 6,000 pounds per acre-foot.

The above-quoted instruction with reference to the testimony of Mr. Kerr and Mr. Traxler is assigned as error by the appellant. Mr. Kerr had testified that he had been in the real estate business in Sacramento for twenty-two years; that he was familiar with the Rio Linda district around the year 1926. He testified that the value of the property on December 14, 1926, was $75 per acre for twenty-five acres, and $50 per acre for fifteen acres. On cross-examination he stated that this was, in his opinion, the market value of the land, although he did not state that he knew anything about sales in the neighborhood. On the other hand, the witness Traxler, for the defendant, testified that he also lived in Sacramento and engaged in the real estate business for twenty-five years, having a great deal to do with the sale of country lands, and that he was acquainted with the Rio Linda district. He testified that he was at one time interested in the Ben Leonard Company, as a member, and acted as agent for the district known as the Arcade district. He stated the conditions in that district are very much the same as in the Rio Linda district. There is no direct evidence that he engaged in selling land in the Rio Linda district, or that

he was liable for prosecution either civilly or criminally for fraud, and no basis for the suggestion of the trial court that they should consider whether or not the witness was endeavoring to protect himself against like suits, "if his representation should turn out not to be accurate." The instruction of the court approving of the testimony of Mr. Kerr, without comment, and suggesting to them that the testimony of Mr. Traxler may have been the result of a desire to protect himself from actions for fraudulent misrepresentations, was argumentative and unfair.

Judgment reversed.

