**PAUL v. ELLIOT.**

No. 9016.

Circuit Court of Appeals, Ninth Circuit.

Nov. 24, 1939.

Rehearing Denied Jan. 5, 1940.

---

Sterling M. Wood, Robert E. Cooke, and Fredric Moulton, all of Billings, Mont., for appellant.

A. G. McNaught and W. W. Mercer, both of Roundup, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Inez Elliot instituted an action in the state court of Montana against H. B. Paul in which she demanded damages for injuries arising out of an automobile collision; on motion of the defendant the case was removed therefrom to the United States District Court for the District of Montana. The cause was tried to a jury, which returned its verdict in favor of the plaintiff in the sum of $4098.60, and the defendant appeals.

The plaintiff was riding as a passenger in a four-door Ford Sedan automobile driven by her sister Irene Elliot. Plaintiff, Irene, and their thirteen-year-old niece, Jean Elliot, were riding in the front seat of their car, plaintiff on the right and the niece in the middle; the rear seat was piled with luggage. At the time of the accident the defendant was alone in his four-door Dodge Sedan.

The accident occurred January 4, 1937, on the road between Roundup and Billings, Montana, about twenty miles south of Roundup and about thirty-three miles north of Billings. At this point the road curves around an abrupt rise or bluff, which forms an oblique angle to the road-bed. The bluff had been cut on the west side and a fill-in made at that point to form a base for the road, which is ten to fifteen feet higher than the ground immediately to the west. The pavement was twenty-nine feet wide; a white line was painted in the center thereof around the curve; and there was a dirt shoulder on each side of the pavement. At the westerly edge of the shoulder there were extended around the bend a number of wooden posts set about twenty feet apart. These posts were painted white with a black base and stood three feet in height. The left front end of each vehicle received the brunt of the impact, and after the collision the cars came to rest nearly opposite each other and on their own sides of the road, the Elliot car close by the posts at the outer or west edge of the oiled pavement and the Paul car at the inner—nearest the bluff—or east edge of the pavement.

There were no witnesses to the accident other than the occupants of the respective automobiles, and the evidence presented was sharply conflicting. Each party contended the other was driving on the wrong side of the road, and they were in disagreement as to the state of the weather. Appellee's witnesses testified that the sky was overcast and snow was falling lightly but that the center portion of the highway was clear of snow; that snow was piled at the sides. The appellant stated that although the day was stormy and snow was falling rather heavily, he could see approximately a quarter of a mile ahead; that the road was slippery, and was covered with snow about an inch in depth. His first view of the Elliot car was from a distance of 75 to 100 feet. The occupants of the other car testified that the Paul car was quite close to them when they first saw it—that it suddenly swung around the curve and was upon them. Appellee and her sister each testified that they were going only twenty-five miles per hour; Irene Elliot stated their car was stopped an instant before the crash. Appellant Paul gave no testimony as regards the rate of his speed other than

874

the statement that the place of the accident was about thirty-two miles from Billings and that it took him about an hour to drive the distance. Irene Elliot estimated Paul was driving 60 miles an hour. There was, however, no controversy concerning the plaintiff's injuries, which were conceded to be serious.

No error is assigned because of the exclusion or admission of any testimony. The appellant contends (1) that the court erred in failing and refusing to direct a verdict in his favor and (2) that the court committed reversible error in the giving of certain instructions and in the refusal to give certain requested instructions.

The appellant argues "that the physical facts brand the appellee's version of the collision as inherently improbable and physically impossible so that there is, in fact, no substantial evidence of the claimed negligence relied upon."

 With this contention in mind we have carefully examined the evidence in the case, and we conclude that the appellee's theory of the case is not inherently improbable or physically impossible and that the case should have been, as it was, submitted to the jury.

"The test to be applied in such a case, of course, is not whether the evidence brings conviction in the mind of the trial judge; it is 'whether or not the evidence to support a directed verdict as requested, was so conclusive that the trial court in the exercise of a sound judicial discretion should not sustain a verdict for the opposing party.' United States Fidelity & Guaranty Co. v. Blake (C.C.A. 9) 285 F. 449, 452, and cases there cited; * * *." Sorvik v. United States, 9 Cir., 52 F.2d 406, 410.

 The appellant tendered certain instructions, which were given. Complaint is made only in relation to one of them. It is not complained that the instruction was incorrectly read to the jury, but appellant argues that the effect desired was lost by the court having theretofore stated in the course of its charge:

"Now, next we come to the requested instructions of counsel for defendant. Now in these cases, the counsel for the respective parties have the right to submit proposed instructions or rules of law, which they ask the Court to give to the jury. They are called special instructions on the case. The instructions offered by the defendant in this case, and in most cases of this kind, are prepared, based upon a statement of facts as viewed by counsel for the defendant. He construes the facts thus and so, as indicated by his argument to you. He prepares his special instructions accordingly, so that you will observe, as I read some of these instructions, that they have a leaning toward the defendant throughout and the defendant's case. They are calculated, of course, to be more favorable to the defendant than to the other side."

In considering the effect of this statement it must be kept in mind, also, that in the same connection and as a part of his charge to the jury the court said:

"Now again, on the other hand next, we will say, comes the special instructions offered by counsel for plaintiff. And you may observe there that they have a special leaning more favorably to the plaintiff, because they are based upon the facts as claimed to exist by counsel for the plaintiff."

The evident purpose, as revealed by the other parts of the charge, was to make clear to the jury that what might appear to be conflicting statements of the law were presented in this way so that the jury would understand that they were to apply the instruction accordingly as it found the facts of the case to be as contended by the plaintiff or the defendant. Such a procedure, if conceivable harm had been shown to have resulted, might be regarded as error, but from the record it is clear that no injury resulted to the defendant. Moreover, the court in introducing the instructions requested by the defendant said: " * * * I am going to read you the special instructions offered by the defendant, or such of them as I have *approved and adopted.*" Thus the judge gave to the requested instructions his explicit sanction, making them his own.

The single instruction which appellant contended was disparaged by the method above outlined was that "if it appears to you that this claim of the plaintiff [that the defendant was driving his car on the wrong side of the road] and the evidence introduced in her behalf to support the same are inherently improbable, in the light of your experience as men, or that, considering physical laws, the accident could not have occurred as plaintiff contends, then and in such event you are at liberty to disregard such evidence in ar-

riving at your verdict." The instruction laid down no principle of law. It merely expounded the obvious. The comments of the court as to its source did appellant no harm.

Next, the appellant contends the lower court committed reversible error in commenting to the jury upon the absence of testimony in the case relative to tracks made by either automobile on the highway at or near the point of the accident.

During its charge to the jury the court made the following comment:

"Well, we know from our own experience that there could be quite a snowstorm and we could see some distance, especially if it was snowing rather slowly, large flakes of snow coming down; but the defendant said the highway was covered and that as he went along he was making a new track as he traveled the highway. Now the plaintiff's proof flatly contradicts that evidence.

"Now gentlemen, you will remember that there were ten persons, as I recall, present at the scene of that accident, there at the time of the accident or very soon after it occurred. The plaintiff and the three in that car, the brother coming on very soon, seeing the circumstances there; the two truck drivers ahead of the three men from Denton, then followed by three men from Denton, who drove up between the cars, and there all observed the scene. Of course there was some excitement. Allowing for that, now if there was snow on the ground so that the defendant's car made tracks, doesn't it seem a little strange to you gentlemen that nobody of the ten persons present there observed the tracks of those cars. Why ordinarily, just one coming or seeing an accident that way would immediately begin to look for tracks to see how the accident occurred and to find out what the circumstances were.

"I cannot conceive of so many being present as that, if the conditions existed as testified by the defendant, without having observed the tracks made by these cars that collided there; and just how they came together.

"Now that is just a thought I want to leave with you. It may be worth your consideration and it may not, because you may enter into other discussions and you may think the ideas of the Court do not throw any light on the subject. But as I recall, there was not any proof at all as to what the condition of the road—of the marks, the tracks—as to how this collision occurred. Well, if it occurred as plaintiff testified, there might not have been very many tracks, if there were seven or eight feet clear in the highway with old snow on either shoulder. But even then, you might have found something there to indicate how those cars moved after the collision, and where they stood when the collision took place. There might have been some indication of that kind.

"Now gentlemen, you may take that suggestion for what it is worth or disregard it altogether, if you see fit. But that is the important question for you to decide, 'how did that collision occur, and who is responsible for it.'"

Near the beginning of his charge the trial judge told the jury:

"* * * You are the sole judges of the facts in the case, the credibility of witnesses, and the weight to be given testimony. That is your sole and exclusive province. The judge may sometimes comment on the evidence. If he does, or if I do so in this case, it would be for the purpose of enabling you to more readily resolve the testimony and apply it, to aid you in arriving at a conclusion rather than to guide you in any particular direction; because that is left solely to your judgment as to what you will do with the evidence.

"However, if the Court should make comments, you do not have to accept the comments, because, as the Court told you, you are the sole judges of the facts; and if the Court should comment on the evidence, you might accept it or reject it as you see fit to do."

Further on, the court cautioned the jury:

"As I said before, you gentlemen are the sole judges of the facts, of the weight to be given testimony, credibility of the witnesses, * * *."

Again,

"As I said before, you are the sole judges of the credibility of witnesses and the weight to be given the evidence."

It is well settled that if in the performance of his duty the trial judge conceives it proper to offer to the jury comments on the evidence, such comment is permissible, even to the extent of expressing an opinion, provided the jury are giv-

en to understand that the opinion expressed is not binding upon them and that they are left free to make their own decision. Vicksburg & Meridian Railroad Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 30 L.Ed. 257; Chetkovich v. United States, 9 Cir., 53 F.2d 26, 27.

 The appellant argues that the comment of the trial judge was erroneous in that it singled out and gave undue prominence to a single fact to the exclusion of other important matters.* But, "The trial judge's expressions of opinion * * * amounted only to suggestions, because of their language and the explanations accompanying them. The evident effect was to admonish the jury that all questions of fact were to be determined by its judgment, independently of anything said by the court, and this severance of questions of fact and of law relieved the charge of any material objection in this respect." Smith v. St. Louis, I. M. & S. R. Co., et al., 6 Cir., 214 F. 737, 742. Moreover, the trial court may properly call attention to a lack of evidence. Hansen v. Boyd, 161 U.S. 397, 405, 16 S.Ct. 571, 40 L.Ed. 746; Longsdorf, Cyc.Fed.Proc., vol. 4, § 1440, p. 975.

Our attention is called to our decision in Sacramento Suburban Fruit Lands Co. v. Parker, 9 Cir., 36 F.2d 926, and in Sacramento Suburban Fruit Lands Co. v. Kral, 9 Cir., 41 F.2d 508, as supporting appellant, but a reading of these opinions will serve sufficiently to distinguish those cases from the instant case.

In any event, "The correctness of every charge must depend upon the phraseology used by the court; * * *." Tracy v. Swartwout, 10 Pet. 80, 35 U.S. 80, 96, 9 L.Ed. 354. See also Longsdorf, Cyc. Fed. Proc., vol. 4, § 1440, p. 975.

Judgment affirmed.

HEALY, Circuit Judge (concurring).

Where requested instructions are adopted they become the instructions of the court, of equal dignity with those given of the court's own motion, and I think the practice of commenting on their source should have our clearly expressed disapproval. Attempts of the trial judge to differentiate such instructions from those formulated by himself necessarily tend to render them of less weight in the deliberations of the jury than if they had not been so tagged. The harm done is not cured by treating with equal disparagement the instructions offered by the other party.

For the reasons last given in the main opinion, I agree that the comments in this instance were not reversible error.

* Citing: Perovich v. United States, 205 U.S. 86, 92, 27 S.Ct. 456, 51 L.Ed. 722; Rio Grande Western Ry. v. Leak, 163 U.S. 280, 288, 16 S.Ct. 1020, 41 L. Ed. 160; Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 433, 12 S.Ct. 679, 36 L. Ed. 485; Carpenter v. Connecticut General Life Ins. Co., 10 Cir., 68 F.2d 69, 73; Urban v. United States, 10 Cir., 46 F. 2d 291, 293; Pullman Co. v. Hall, 4 Cir., 46 F.2d 399, 404.