**STOLTE et al. v. LARKIN (two cases).**

**Nos. 11188, 11189.**

Circuit Court of Appeals, Eighth Circuit.

March 12, 1940.

Charles S. Kidder, of St. Paul, Minn. (Orr, Stark & Kidder, of St. Paul, Minn., on the brief), for appellants.

L. L. Duxbury, of Caledonia, Minn., and F. E. Withrow, of La Crosse, Wis., for appellees.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

These are two personal injury actions, one brought by John H. Larkin for injury to himself, and the other brought by him for injury to Robert Larkin, his ward. The cases arose out of the same occurrence, were consolidated for trial, resulted in verdicts for each plaintiff. From the respective judgments entered thereon these appeals are brought.

Appellants present here three matters. The first of these is denial of motions for directed verdicts (on grounds of insufficiency of proof of negligence of appellant Everett Stolte and conclusive proof of contributory negligence of John H. Larkin); the second has to do with claimed errors in connection with the charge and refusal to charge, and the last concerns exclusion of one piece of evidence.

I. Motions for Directed Verdicts.

The claim that the evidence is insufficient to sustain the finding of negligence of the defendants and the claim that John H. Larkin was guilty of contributory negligence both require a review of the testimony in the light most favorable to plaintiffs.

The collision resulting in the injuries complained of occurred in the forenoon of Sunday, July 1, 1934. The defendant Everett Stolte was driving his father's Nash automobile north on U. S. Highway 61, a paved road 18 feet wide, which runs from LaCrosse, Wisconsin, along the west side of the Mississippi River through the State of Minnesota to St. Paul and Minneapolis. The day was clear, and there was a great deal of traffic on the road. About two miles north of the village of La-Crescent, Minnesota, the road curves to the west and at the same point passes over a slight elevation. The collision occurred

at the crest of the elevation when the vehicles were on the curve.

As Stolte proceeded north up the incline he was following a slowly moving car driven by Clarence H. Witt. In the preceding mile Stolte had attempted to pass the Witt car several times, but had been forced back each time by approaching traffic. At the same time the plaintiffs were travelling south on the west side of the highway. John Larkin sat in the front seat of a motorcycle and managed the driving, Robert sat behind him on a seat supported by coiled springs. The Larkins were following about 100 to 150 feet behind a car driven by Russell J. Smith. Shortly before the collision the Smith car and the Larkins' motorcycle were travelling south on the west side of the road at a speed of 45 miles an hour and the Witt car followed by the Stolte car was moving about 30 miles per hour. Just before the collision the Smith car slowed down somewhat to about 25 miles per hour, keeping close to the west edge of the pavement, and the motorcycle came up to within about 30 feet of the rear end of the car. At that time the Witt car passed the Smith car and the Stolte car, about 15 or 20 feet behind Witt, picked up speed and turned immediately to the west behind the Smith car to pass the Witt car ahead. When John Larkin saw the Stolte car cross the black center line into the west lane ahead of him he was about three feet west of that line going about 30 miles an hour. He immediately increased his speed to about 40 miles an hour and attempted to turn to his right to avoid a collision, but it was too late. The motorcycle struck the left front fender of the Stolte car, went over to the right and sideswiped the Smith car. Robert Larkin testified that:

"When the motorcycle and the Stolte car came together I was thrown over the front end of the Smith car about 5 or 6 feet ahead of it.

"Q. Do you know whether you left the motorcycle at once or did the motorcycle come with you? A. The motorcycle came with me for a while until I let go.

"Q. The motorcycle went to the ground did it as it struck the Stolte car? A. Yes.

"Q. And went over toward the south? A. Towards the Smith car,

"Q. And you went headlong over the front of the Smith car? A. Yes.

"Q. Do you know where you landed? A. About 5 or 6 feet in front of the Smith car on the shoulder right off the pavement.
* * *

"Q. Do you have any idea how far you were thrown? A. Well, I was thrown about 5 or 6 feet in front of the car, so I couldn't have been thrown over 10 feet altogether.

"Q. That is at the time of the impact when your brother's motorcycle struck the Stolte car you were thrown about 10 feet?

"Mr. Duxbury: That is contrary to the testimony.

"The Witness: I said after we hit and then I was thrown over the radiator about 5 or 6 feet in front of the Smith car.

"Q. You didn't say 10 feet altogether? A. No, not altogether.

"Q. But after your motorcycle and the Stolte car came together you were thrown over the Smith car? A. Over the radiator of it.

"Q. Your body came to rest about 5 feet ahead of it? A. Yes."

Clarence H. Witt, driver of the Witt car, testified:

"Q. Did you see the actual impact between the motorcycle and the Stolte car? A. I did.

"Q. You saw that? A. Yes sir.

"Q. Where was the front end of the Stolte car at that time? A. Over the center black line and it was over, I would say 4 feet.
* * *

"Q. The impact between the Stolte car and the motorcycle happened towards the rear of your car? A. Towards the rear, yes.

"Q. So the motorcycle came up along side of you didn't it? A. Not alongside of me.

"Q. How did it come up to you? A. You mean meeting it, it was opposite me.

"Q. How close was he to you when you met him? A. Oh he was on his side of the black line, I would say about 2 or 3 feet or something on that order and I was on my side of it."

When the collision occurred the drivers of the Stolte and Smith cars applied their brakes and stopped the cars immediately. It was found that the Stolte car stood

across the center line of the road with its front end three or four feet over the line on the west or wrong side thereof. The rear end of the Stolte car had passed the rear end of the Smith car by about two feet.

The contention that the evidence does not support a finding of negligence is based upon the argument (1) that it was physically impossible for the accident to have occurred as claimed by plaintiffs and (2) that the evidence tends to support two wholly irreconcilable propositions.

■ The evidence is sufficient to authorize submission to the jury. There can be no serious question that the oral testimony given by the two plaintiffs and Mr. and Mrs. Witt makes a clear direct case of negligence if it is taken alone. The gravamen of this contention as to insufficient evidence is really that certain physical facts which are not in dispute are contended as showing that the above oral testimony could not be true and, therefore, the cases should not have been submitted to the jury.

■ As a rule of law, it is true that where undisputed physical facts are entirely inconsistent with and opposed to testimony necessary to make out a case for the plaintiff, the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which is flatly opposed to physical facts, the existence of which is thus established. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440.

The physical facts here emphasized are, in the main, the position of the two plaintiffs after the accident. Robert Larkin rested several feet in front of and to the right of the Smith car. He was approximately upon the outer edge of the pavement. Some witnesses place him partly on and partly off the pavement, while others seem to think he was more off of the pavement than on. John Larkin was found on the pavement near the left front door of the Smith car.

■ While these locations of the plaintiffs as a result of the accident may fit in more reasonably with the theory of defendants' evidence as to how the accident occurred, yet the test is not whether we, or the trial Judge, might have been convinced that defendants' theory of the occurrence of the accident was actually true but whether the physical facts make the theory of the plaintiffs so physically impossible

that a verdict for plaintiffs could not be sustained. Paul v. Elliot, 9 Cir., 107 F.2d 872; Falstaff Brewing Corp. v. Thompson, 8 Cir., 101 F.2d 301, certiorari denied 307 U.S. 631, 59 S.Ct. 834, 83 L.Ed. 1514; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440.

The argument assumes that the evidence shows that at the moment of collision Robert Larkin started his flight over the Smith car and came to earth five or six feet in front of it. Since he travelled about 10 feet only and passed over the front end only of the Smith car, the collision, it is argued, occurred near the front end of the Smith car and not at its rear. This would demonstrate that Larkin was the negligent party and was attempting to pass the Smith car when he ran into and against the Stolte car on the east side of the road. The argument is based upon general expressions in the evidence such as "when" the collision occurred Robert Larkin was thrown over the front end of the Smith car, and "then" he was thrown into the air. Robert Larkin's positive and definite statement regarding what occurred, however, is not contradicted. He was asked, "Do you know whether you left the motorcycle at once or did the motorcycle come with you?" and he answered, "The motorcycle came with me for a while until I let go." The jury was not compelled to find any impossibility in this situation.

The second argument is based upon the testimony as to the speed of the cars and their position after they had stopped. The claim is that, since the cars were moving 25 or 30 miles an hour at the time of the collision and the Stolte and Smith cars came to a stop only about two feet apart, the jury was not warranted in finding that the collision occurred after those cars passed each other. It must be observed that this hypothesis is based upon estimates as to speed, made long after the event, concerning movements made by witnesses in a state of excitement. The conclusion drawn by counsel from such estimates is contradicted by four eye witnesses and by the position of all the vehicles after they came to rest. The motorcycle stopped on the west side of the center line of the road after having turned round so that it faced north. The four witnesses saw the collision and testified that it occurred just behind the Smith car and on the west side of the center line of the road. Besides, it is to be remembered that the Smith car had begun slowing up before the collision occurred

and the Stolte car was aided in stopping short by the impact with the motorcycle.

According to the evidence of appellees, the motorcycle, with a suddenly accelerated speed of more than thirty miles an hour, came into sudden contact with the left front fender of defendants' automobile approaching at an angle at about thirty miles an hour. With two automobiles and a motorcycle moving in various directions and the lighter vehicle violently colliding with first one car and immediately afterwards with the other car, almost anything might happen and it is impossible to reconstruct the occurrence from positions of cars, motorcycle and appellees with that certainty which alone justifies a court in determining conclusively how the accident happened.

■■ The argument that John Larkin was guilty of contributory negligence as a matter of law is without merit. The charge is that in the moment when Larkin saw the Stolte car coming across the center line toward him he continued in a straight course without swerving to the right; that he increased the speed of his motorcycle; and that he did not apply his brakes. It is not possible to say that Larkin could have avoided the collision had he done all that counsel say he should have done. But Larkin was faced with a sudden emergency. He tried to escape by attempting at least to turn to the right and by speeding up his motorcycle to get out of the way of the oncoming car. The law does not require one to choose the best way of escape from an imminent peril suddenly created by the negligence of another. An error of judgment, if it be such, is excusable. Anderson v. Davis, 151 Minn. 454, 187 N.W. 224; Dentinger v. Uleberg, 171 Minn. 81, 213 N.W. 377; Sathrum v. Lee, 180 Minn. 163, 230 N.W. 580.

## II. The Charge.

Appellants challenge the charge in two particulars. They contend (a) that the issues as to the negligence of John Larkin and the stopping of the Smith car in his path as being either the proximate or contributing cause of the accident were inadequately submitted, and (b) that submission of the failure to sound horn and excessive speed were fatal errors because unsupported by any evidence.

■ Contention (a). Under this contention appellants argue error in refusing their requests 1, 2 and 3. It is unnecessary to set forth those three requests here. The substance may be stated as follows. Number 1 submitted the theory that if plaintiff attempted to operate his motorcycle between the Smith and Stolte automobiles that was negligence. Number 2 submitted the theory that if the slowing down of the Smith car and the speeding and proximity of the motorcycle prevented Larkin from remaining behind the Smith car and avoiding a collision the verdict should be for defendants. Number 3 is substantially the same as number 2. The issues involved in these requests—in so far as there was any supporting testimony—were substantially and adequately submitted in the charge given.

Appellants contend that the alleged errors in refusing these requests are emphasized by the failure of the court in the general charge to adequately submit the question of whether or not the accident was proximately caused by the sudden stopping of the Smith car or the speed or proximity with which Larkin approached the Smith car or both. For reasons just stated there is no basis for such a contention.

■ Contention (b). This contention has to do with appellants' claim that fatal error was committed in charging that the jury might find excessive speed or failure to warn as recoverable negligence. As to both of these matters there could have been no prejudice even supposing there were error in submitting these two matters to the jury and even supposing that they were submitted in the charge. However, it seems to us there would be no error in submitting both of these matters as both are directly involved in the sudden turning of appellants from their lane of travel into the other when almost upon appellees approaching in the opposite direction. Whether a warning signal could have been given to have avoided the accident or whether had this movement been made at slower speed may be questionable. It is very conceivable that had either been done the accident could well have been avoided. Stolte testified that he did not sound his horn or give other warning. The law required him to do so. The instruction on warning was correct. As to speed the evidence showed that as Stolte started to pass the Witt car ahead of him he accelerated his speed. Excessive speed is a relative matter. It depends upon the surrounding circumstances. Under the circumstances of this case it was proper to submit these issues to the jury.

### III. Exclusion of Evidence.

This has to do with the exclusion of paragraph V in each of the petitions. The portion of the paragraph emphasized by appellants is down to the first semicolon. The entire paragraph (in the suit by John H. Larkin for his own injuries) is as follows:

"That at the time and place above mentioned, Defendant H. W. J. Smith suddenly and without giving any signal or warning, negligently and carelessly slackened the speed of his said automobile and operated the same to a stop, or practically so, and failed to turn to the right as he had ample space and opportunity to do safely, and otherwise carelessly and negligently failed to operate his said automobile so as to take the same out of the path of the Plaintiff coming from his rear; that at the same time, the defendant, Everett Stolte, without giving any warning or signal, negligently and carelessly drove his said automobile to the left, west or wrong side of the center line of said U. S. Highway No. 61 and proceeded at a high, dangerous and negligent rate of speed to-wit, more than 50 miles per hour, to pass the said automobile proceeding northerly ahead of him on the east or right side of said U. S. Highway No. 61, without the said left or west side of said highway being clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such passing to be made in safety, the said automobile of the Defendant H. W. J. Smith and the motorcycle of the plaintiff then and there approaching immediately from the north."

The contention as to the effect of the first part of the quoted allegation is that: "The irresistible inference of this assertion of fact is that John Larkin was compelled, by his speed of approach, and the presence of the Smith car practically stopped in his path, to turn out or collide with the Smith car. This, as we have shown on our previous points, is the theory of the accident contended for by the appellants.

"It is entirely inconsistent with part of the Larkin boys' testimony to the effect that they came up behind the Smith car under control, going only thirty miles per hour, able to stop within eight feet and fully aware of Smith's 'slow down' which was only to a speed of 25 miles per hour.

"It is likewise wholly inconsistent with their testimony that Smith pulled well over to the right of his lane."

From the just quoted contention of appellants it is clear that the grounds which they now urge for admission of the testimony are both for impeachment and as an admission against interest. The first matter to be determined is whether the form of offer was such as to call the attention of the trial court to the purpose thereof. The offer was made during cross-examination of John H. Larkin. What then took place is set forth in the footnote.[1] We think this

---

[1] "Before this action was started I talked to my attorneys a number of [time], the first time probably a year after the accident.

"At that time I stated to Mr. Withrow all the facts of the accident, just how it happened and all that.

"I also told Mr. Duxbury all the facts and circumstances connected with this accident.

"Q. You told him about the various things or the various acts of negligence against each of the defendants did you?

"Mr. Duxbury: I object to that as incompetent, irrelevant, and immaterial and it has no bearing on the issues in this case.

"The Court: It is a confidential communication and for that reason it is sustained.

"The ruling is that the objection is sustained.

"The Witness: I did not see the complaint in this action after it was drawn.

"Mr. Lilly: I wish to offer in evidence, if they are not already in, I wish to offer the complaint in each of the actions.

"The Court: It will not be necessary to mark the complaints, just describe them sufficiently.

"Mr. Lilly: The defendants Stolte wish to offer in evidence as their Exhibit A, or whatever mark you wish to give it, the complaint in this action in the case of John H. Larkin versus Albert C. Stolte, Everett Stolte and H. W. J. Smith, the file number is 3763.

"Mr. Duxbury: That is objected to as incompetent, irrelevant and immaterial and no foundation laid.

"Mr. Lilly: In paragraph 5 I wish to prove 'That at the time and place above mentioned the defendant H. W. J. Smith suddenly and without any signal or warning negligently and carelessly slackened the speed of his said automobile and operated the same to a stop or practically so.'

"Mr. King: The defendant Smith objects to that offer of proof on the ground that it is not proper for one co-defendant to try to impeach the plaintiff and make out a case against this co-defendant. There is no issue between us. He has

shows that both impeachment and admission against interest were sufficiently brought to the attention of the court to make the action of the court reviewable here.

This allegation in the petitions is certainly opposed to testimony theretofore given by this witness as to the movements and slackening of speed of the Smith car. Also, this allegation would plausibly fit into the theory of appellants as to how the accident occurred. Therefore, the evidence was material and, if its exclusion erroneous, it was prejudicial.

▆▆▆ That statements in pleadings in the nature of admissions against interest are admissible is established not only in federal courts (Darling Shops of Tennessee v. Brack, 8 Cir., 95 F.2d 135, 141) and in Minnesota (Bakkensen v. Railway Co., 184 Minn. 274, 238 N.W. 489, 490; Carpenter v. Tri-State T. & T. Co., 169 Minn. 287, 289, 211 N.W. 463, 464; Vogel v. Osborne & Co., 32 Minn. 167, 20 N.W. 129), but generally (20 Am.Jur. 532, Sec. 630; Annotations in 14 A.L.R. 22 and 90 A.L.R. 1393). In this respect the Bakkensen case, supra, seems particularly apposite because there the pleading offered had to do with statement in a cause of action against both the operator of a street car and the operator of an automobile where, upon death of the automobile driver, a new action was filed against the street car operator alone and in the second action the former pleading was introduced. Here, plaintiff stated a cause against the drivers of two automobiles but on trial virtually abandoned the action against one driver (Smith) and a verdict was directed for that defendant.

Appellees urge various reasons why the exclusion of this evidence was not error. We have examined each of them. We find no merit in any of them and see no useful purpose in discussing them in this opinion for such exclusion is clearly error.

---

a perfect right to do whatever he wants to do in his own case but he cannot impeach in our case.

"The Court: Do you make this offer of the pleadings for the purpose of impeaching this witness on the stand?

"Mr. Lilly: Here is my purpose, not for the purpose of involving the defendant Smith, but as showing either directly or by inference, that this fellow came up behind this car and instead of following or slowing down, this car stopped in front of him and he shot off to the left in front of our car.

"The Court: The purpose is the impeachment of this witness?

"Mr. Lilly: Yes.

"Mr. King: It is unsigned by the witness.

"The Court: There is no foundation laid. You will have to lay a foundation and if there is an objection made to it on that ground I will have to sustain the objection.

"Mr. Duxbury: I object to it on that ground, as no foundation laid.

"The Court: I will sustain that objection.

"Mr. Lilly: The witness has already testified he made one statement to his attorney.

"Mr. King: But he did not say he put those facts down there.

"The Court: Perhaps the attorney did not draw the complaint in accordance with the facts. It will be sustained on the ground that no foundation is laid.

"Mr. Lilly: This is changing the whole atmosphere here.

"The Court: I understand your position perfectly and I think I know what your purpose is in offering it but I say to you at this time that you have not laid a proper foundation for the introduction of this exhibit.

"Mr. Lilly: That may be. I cannot get out of this witness any conversation that transpired between his attorney and the client.

"The Court: That is confidential surely.

"Mr. Lilly: He says he made a whole disclosure. I see the point that the Court makes, that the attorney may have made a misstatement.

"At this time I wish to make an offer of proof and I wish to offer in the action of John H. Larkin vs. Albert C. Stolte, Everett Stolte and H. W. J. Smith, the Complaint he filed in this action.

"Mr. Duxbury: Objected to on the ground it is incompetent, irrelevant and immaterial and no foundation laid.

"The Court: I am going to sustain the objection at this time.

"Mr. Lilly: We also wish to offer in evidence the Complaint in the action now pending before this court and tried herein, being entitled Robert Larkin, an infant, by John H. Larkin, his general guardian, plaintiff, against Albert C. Stolte, Everett Stolte and H. W. J. Smith.

"Mr. Duxbury: Objected to on the ground it is incompetent, irrelevant and immaterial and no foundation laid.

"The Court: Sustained.

"Mr. Lilly: Note an exception to both of those rulings."

To avoid misapprehension on retrial, it is advisable to state the scope and effect of this evidence. There are admissions in pleadings which are conclusively binding upon the party making them. There are other such admissions of milder character which are not conclusive but which are proper evidence as constituting statements against interest. The latter class of admissions in pleadings occupies the same place in a trial as other admissions against interest no matter how made. The admission involved here is of this latter class. We deem it unnecessary to discuss the considerations which differentiate these two classes of admissions because appellants properly and wisely concede that such is the character of this admission—that it is simply "competent and cogent evidence" against appellee.[2]

What has been said as to the error in excluding this evidence applies to the action by John H. Larkin for his injuries. A substantially identical provision was in the petition filed by John H. Larkin as guardian for Robert Larkin. Does the rule apply equally to the action brought by him as guardian for the minor Robert Larkin on account of the injuries to Robert? If the ruling excluding the pleading in the Robert Larkin case was right, it should be upheld even though the reason for exclusion given by the trial Court was erroneous. Langnes v. Green, 282 U.S. 531, 538, 539, 51 S.Ct. 243, 75 L.Ed. 520; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 560, 51 S.Ct. 248, 75 L.Ed. 544; Peoria, etc., Ry. Co. v. United States, 263 U.S. 528, 536, 44 S.Ct. 194, 68 L.Ed. 427; Bolles v. Outing Co., 175 U.S. 262, 268, 20 S.Ct. 94, 44 L.Ed. 156; The Maria Martin, 12 Wall. 31, 40, 20 L. Ed. 251; Board of Commissioners, etc., v. Hurley, 8 Cir., 169 F. 92, 94.

The weight of authority favors the rule that the guardian of a minor cannot make admissions affecting substantial rights of the minor so as to bind the minor. This rule applies to admissions in pleadings where the minor is either plaintiff or defendant.[3] Since this case is brought by the guardian of the minor Rob-

[2] In appellants' brief it is stated:

"While we might well claim under many Federal authorities that plaintiffs were absolutely bound and concluded by this allegation in their pleadings, we do not make such claim. It may be untenable because we did not object on that ground to some inconsistent evidence of the Larkin brothers when it came in.

"Be that as it may, what seems to us the better rule of the cases is that a party is not conclusively bound by an assertion of fact in his pleading, at least, when not in the nature of a solemn judicial admission; nevertheless, it is competent and cogent evidence against him. Under the authorities it is admissible."

[3] White v. Joyce, 158 U.S. 128, 146, 15 S.Ct. 788, 39 L.Ed. 921; Kingsbury v. Buckner, 134 U.S. 650, 680, 10 S.Ct. 638, 33 L.Ed. 1047; Ashford v. Patton, 70 Ala. 479; Matthews v. Dowling, 54 Ala. 202; Rankin v. Schofield, 70 Ark. 83, 66 S.W. 197, 198; Id., 71 Ark. 168, 66 S.W. 197, 70 S.W. 306, 100 Am.St.Rep. 59; McCloy v. Arnett, 47 Ark. 445, 456, 2 S.W. 71, 75; Knights Templars', etc., Co. v. Crayton, 209 Ill. 550, 70 N.E. 1066, 1071; Lloyd v. Kirkwood, 112 Ill. 329, 339; Chaffin v. Kimball's Heirs, 23 Ill. 36, 38; Cochran v. McDowell, 15 Ill. 10, 11; Hiatt v. Brooks, 11 Ind. 508; Ralston v. Lahee, 8 Iowa 17, 26, 74 Am.Dec. 291; Stinson v. Pickering, 70 Me. 273; Tucker v. Bean, 65 Me. 352, 353; Stewart v. Duvall, 7 Gill & J., Md.,

179; Chandler v. McKinney, 6 Mich. 217, 219, 74 Am.Dec. 686; Johnson v. McCabe, 42 Miss. 255; Ingersoll v. Ingersoll, 42 Miss. 155, 163; Spotts v. Spotts, 331 Mo. 917, 55 S.W.2d 977, 983, 87 A. L.R. 660; Gebhardt v. United Railways Co., Mo.Sup., 220 S.W. 677, 679, 9 A.L. R. 1076; Collins v. Trotter, 81 Mo. 275, 283; Revely v. Skinner, 33 Mo. 98, 101; Fink v. Kansas City S. R. Co., 161 Mo. App. 314, 143 S.W. 568, 571; Caruso v. Caruso, 102 N.J.Eq. 393, 141 A. 16, 19; Ahearn v. Bowery Sav. Bank, 164 App. Div. 809, 150 N.Y.S. 244; Geraty v. National Ice Co., 16 App.Div. 174, 44 N.Y. S. 659, 664 (affirmed without opinion 160 N.Y. 658, 55 N.E. 1095); Litchfield v. Burwell, 5 How.Prac.,N.Y., 341; Long v. Mulford, 17 Ohio St. 484, 503, 93 Am. Dec. 638; Greene v. Mabey, 35 R.I. 11, 85 A. 118, 120, Ann.Cas.1915A, 1290; Eaton v. Tillinghast, 4 R.I. 276, 284; Hodges v. Hale, 20 Tenn.App. 233, 97 S. W.2d 454, 458; Knight v. Waggoner, Tex.Civ.App., 214 S.W. 690, 692; Daingerfield v. Smith, 83 Va. 81, 1 S.E. 599; Bank of Alexandria v. Patton, 1 Rob. Va., 499; Childers v. Milam, 68 W.Va. 503, 70 S.E. 118; Glade Coal Min. Co. v. Harris, 65 W.Va. 152, 63 S.E. 873, 875; Holderby v. Hagan, 57 W.Va. 341, 50 S.E. 437, 439, 4 Ann.Cas. 401; 14 R.C.L. 291, Sec. 58; Annotation 14 A.L. R. 87, 88; 31 C.J. 1143, Sec. 304; and see Bank of the United States v. Ritchie, 8 Pet. *128, *144, 8 L.Ed. 890.

ert, it is clear that the exclusion of these petitions was, in his suit, proper.

### Conclusion.

The result is that the judgment in the suit by John H. Larkin as guardian of Robert Larkin is affirmed and the judgment in the suit by John H. Larkin is reversed and the case remanded for a new trial.

WOODROUGH, Circuit Judge (concurring in part).

I concur in the conclusion of the opinion prepared by Judge STONE that the judgment in favor of John H. Larkin should be reversed for the prejudicial error pointed out, but I have been unable to find in the record any credible or substantial evidence to sustain a verdict in favor of the plaintiff in either case. I think the motions to direct verdicts for defendants should have been sustained in both cases.